## Commonwealth *v.* Bishop, Appellant.

Argued November 18, 1957.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John B. Schaner,* for appellant.

*Horace J. Culbertson,* for appellee.

OPINION BY GUNTHER, J., January 21, 1958:

This appeal is from the order of support entered September 16, 1957, by the Quarter Sessions Court of Mifflin County in which appellant, Clarence F. Bishop, was ordered to pay the sum of $24.00 per week for the support of his two minor children.   The amount of support is not in issue.

On July 13, 1957, Maxine Bowsman, mother of Barbara Kay Bishop, age 15, and Robert Lee Bishop, age 13, filed information against appellant charging him with neglect to maintain their two children in violation of section 733 of The Penal Code of 1939, as amended, 18 P.S. 4733.   Appellant moved to quash

the proceedings on the ground that the Court of Common Pleas, on November 9, 1956 to No. 14 January Term, 1957, had entered a consent order in habeas corpus proceedings awarding custody of the two children to him with certain rights of visitation reserved to the mother. This consent order contained no provision for support. The motion to quash was subsequently dismissed and a full hearing on the issue involved was held.

The testimony disclosed that on September 15, 1956, the parents agreed that the children remain in custody of their father and that the mother have rights of visitation during certain week ends, summer vacation and holidays.[1] This agreement was substantially incorporated in the habeas corpus proceedings. The children visited their mother during the Christmas holidays in 1956 and thereafter refused to return to the father's home and remained with their mother since January 7, 1957. When the mother called for the children on December 22, 1956, they both cried and did not wish to remain with their father. At that time the boy had no shirt, shoes or socks. The girl's shoes were worn out and her coat was filthy. Her underclothing was dirty and worthless. She had an inward infection which was cured by medical care procured by the mother. She was nervous, high-strung and scared.

Both children testified as to the treatment accorded them by the father. The girl testified that she had been whipped by her father with a belt causing welts, cuts and bruises; that the father struck her face with his fist and that he threatened to beat her on several occasions. She testified that she lost about twenty days from school between September and December, 1956,

---

[1] This apparently was in recognition of the fact that the children had been in custody of the father since 1948.

because she was required to help her stepmother with the housework. She stated that her stepmother kicked her causing her to become hospitalized and that she feared both her father and stepmother. She wrote a letter to the District Attorney telling of her treatment but the father, upon discovering this letter, forced her to write a denial which he dictated. The boy testified he had received five beatings with a belt. He was struck a number of times by his father with his fist, one time so severely that his eyes were blackened. He further testified that he was required to miss considerable schooling to assist his father in erecting television antennas. He, too, was in fear of his father.

The mother corroborated the inadequacy of clothing and poor health when the children left the father to spend the Christmas holidays with her. She also testified that the first time the children complained to her of mistreatment by the father was in November, 1956, after the entry of the consent order in the habeas corpus proceedings.

At the time of the hearing, the court below found that the children were neatly dressed, composed and appeared to be in the best of health.

The father admitted that his daughter had gone to the hospital but insisted he did not know what had bloodied her head which required hospitalization. He admitted using a belt on his son but denied the use of excessive punishment. He also admitted that he had provided no support for his children since January 7, 1957, although a transcript of the wages paid by his employer showed an average weekly net earning of $106.62 for twelve pay periods immediately preceding the hearing. The record is devoid of any effort on the part of the father to keep in touch with the children or manifest any interest in their education or welfare.

The sole issue raised on this appeal is whether under the circumstances set forth, particularly in view of the outstanding order of custody placing the children with the father, the appellant is required to support the two minor children now living with the mother.[2]

Appellant contends that no support order could be made against him even though the children were no longer living with him, and that not having waived objections to an order of support and having legal custody, he cannot be compelled to support the children living, without his consent, with the mother. It is urged that compelling support under such circumstances would invite contempt of the custody order and that this would invite disobedience by one party while the same order is observed in good faith by the other.

A father who is willing to take his children and properly care for and maintain them is, ordinarily, entitled to their custody and should not be compelled to pay another for their support. However, the burden rests with one making this defense to satisfy the court that the offer is made in good faith and would be for

---

[2] A petition to modify the habeas corpus order of November 9, 1956 was presented in the Court of Common Pleas of Mifflin County which was set for hearing on October 31, 1957. On that date, appellant did not appear but his counsel presented a petition requesting that Judge LEHMAN disqualify himself from hearing said petition to modify. The same day Judge LEHMAN entered an order disqualifying himself from hearing the petition to modify the habeas corpus custody order and postponed the hearing to November 4, 1957. On that date counsel for appellant presented a motion to strike said petition and for a more specific petition. These motions were denied by Judge CRYTZER, specially presiding, and November 20, 1957 was set for a hearing. This was two days after this appeal was argued. On November 20, 1957, appellant appeared only through counsel and after taking testimony of appellee, the court entered an order awarding custody of the children to the mother.

the best interest of his children. *Commonwealth v. Campbell,* 128 Pa. Superior Ct. 72, 79, 193 A. 119. But a custody order cannot be construed as a magic wand to ward off responsibility for support regardless of the circumstances. Orders determining the custody of children are temporary in their nature and are always subject to modification to meet changed conditions. *Commonwealth ex rel. Teitelbaum v. Teitelbaum,* 160 Pa. Superior Ct. 286, 288, 50 A. 2d 713. Were it otherwise, a father, even without an order of custody but merely upon agreement with the mother as to his retaining actual custody, could effectively deny support to his children merely upon a claim of custody.

The duty is upon the father to support his child. The parents cannot bargain away that right: *Commonwealth ex rel. Silverman v. Silverman,* 180 Pa. Superior Ct. 94, 98, 117 A. 2d 801; *Commonwealth ex rel. Heller v. Yellin,* 174 Pa. Superior Ct. 292, 295, 101 A. 2d 452. In *Commonwealth ex rel. Rossi v. Rossi,* 161 Pa. Superior Ct. 86, 89, 53 A. 2d 887, this Court, speaking through Judge HIRT, said: "This support proceeding is not an action brought to enforce the performance of a contractual obligation. It is a quasi-criminal proceeding brought by the minor child in the name of the Commonwealth, though at the relation or on information, of the child's mother. The relationship of parent and child is a status—not a property right (Com. ex rel. Teitelbaum v. Teitelbaum, 160 Pa. Superior Ct. 286, 50 A. 2d 713) and a mother cannot, by contract, bargain away the right of her minor child to adequate support, to the relief of the father, irrespective of the legality of the agreement between the parents themselves."

The crux of the question here involved is whether, regardless of custody, the children have been compelled to live apart from the father because of his own mis-

conduct toward them. This was the issue and the court below concluded, on competent evidence, that appellant's treatment of his children warranted living away from him. Even though custody has been awarded to him, if such children are compelled to leave his home or live apart from him because of his misconduct or wrongdoing, the father remains liable for support during their absence from his home. 39 Am. Jur., p. 649; 67 C. J. S., p. 695.

We are satisfied on this record that the children of their own volition chose to remain with their mother and that they were justified in refusing to return to the father because of his own misconduct. A father cannot idly sit by, unmindful of the needs of his children and of his own misconduct and expect exoneration from support because he was awarded custody. Had the father been sufficiently interested in the welfare of his children, he would have petitioned the court for an order to show cause why the order of custody should not be complied with. Support proceedings are practical considerations often involving the immediate care and welfare of minor children. If technical objections are raised by the father to thwart his obligation to support, the least expected of him is to support such children until such questions are resolved. If the children then should be returned to the father under habeas corpus proceedings, the order to pay support would then be suspended. We find no merit on this appeal.

The order of the court below is affirmed.