Commonwealth ex rel. McLeod, Appellant, *v.* Seiple.

Argued June 20, 1960. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-
GOMERY, JJ.

*S. Maxwell Flitter,* for appellant.

*George Weitzman,* with him *Charles D. Hogan,* for
appellee.

OPINION BY WRIGHT, J., September 16, 1960:

We are here concerned with a controversy between
parents, divorced and remarried, involving the custody
of their five year old child, Roxanne D. Seiple. The
court below awarded custody to the father, Richard H.
Seiple, with right of reasonable visitation in the mother,
Marion M. McLeod. The mother has appealed. The factu-
al situation appears in the following excerpt from the
opinion below:

"Roxanne's parents, Marion M. Seiple, nee Davis,
and Richard H. Seiple, were married in the city of
Easton, Penna., January 7, 1951. Roxanne was born

November 22, 1954. June 11, 1956, at the suit of Richard, the couple was divorced by decree of the Court of Common Pleas of Northampton County. At that time, Marion lived with her mother, Lenora Davis, in Washington, N. J., and had custody of Roxanne. Marion remained there until the last week of September, 1956, or the first week in October of that year. At that time she gave custody of Roxanne to the child's father, defendant herein.

"October 27, 1956, Marion married Zane Firman Garinger, a member of the United States Air Force. A child of this marriage, Zane Scott Garinger, was born November 11, 1957. On July 25, 1958, the Garingers separated and on December 10, 1958 at the suit of Zane Firman Garinger, the parties were divorced by decree in Chancery to No. 110949-C, in and for the Thirteenth Judicial Circuit of Hillsborough County, Florida.

"On August 17, 1959, the plaintiff, Marion M. Garinger, nee Davis, married Wiley J. McLeod. McLeod, age 23, is an Airman 2nd Class of the United States Air Force. Up to the time of the hearing he had been in the service for a period of three years and eight months. Presently he is located at the MacDill Air Base, Tampa, Florida. He and plaintiff reside at 6303 South Adelia Avenue, Tampa. McLeod's parental home is in Enterprise, Alabama. Presently his monthly income is as follows: $124.00, base pay; $51.30, quarters; $33.00, separate rations. The McLeods reside in a four room house; Kitchen, living room and two bedrooms, for which they pay a monthly rental of $40.00.

"Defendant, Richard H. Seiple, age 29, was remarried February 9, 1957. He and his wife, Perma, reside at 2107 Hay Street, Wilson Borough, and are buying their home under an agreement of sale. Mr. Seiple is a salesman or routeman for Suncrest Farms, Inc. His compensation is $75.00 per week plus commissions. His

total pay presently averages $90.00 to $95.00 per week. Perma Seiple, too, is employed and works at the Transogram factory where she earns about $50.00 per week.

"From all of the testimony and exhibits it appears that following the separation of the parties, or their divorce on June 11, 1956, custody of Roxanne was divided between the parties by mutual consent. This agreement was formalized in writing on January 31, 1958 and is designated in the record as Relatrix' Exhibit No. 1. Under the agreement custody of Roxanne has been as follows . . . May 30, 1958 to date, Easton, Penna., with father. Sometime prior to August 31, 1958, Marion wrote to Richard and stated that she was having 'in-law' trouble and that he, Richard, should continue custody of Roxanne until further advice. No request was made by Marion for custody of Roxanne from that time until December 23, 1959 when plaintiff presented her petition for a writ of habeas corpus . . .

"Defendant, Richard H. Seiple, and his wife, Perma, are Protestants. Since Roxanne was last returned to them, May 29, 1958, they take her to Sunday School and/or church at the Memorial Reformed Church. Roxanne's schedule because of Mr. and Mrs. Seiple's employment is as follows: Sunday through Thursday, Roxanne is given her evening meal and then entertained with television or otherwise until 7:30 P.M. She is then prepared for bed and taken to her great grandmother's home, Mrs. Bessie Bennett, Palmer Township. Roxanne retires at the Bennett home and the next morning she is bathed and dressed and escorted to a public school bus and thereby transported to the Palmer Township kindergarten. At 11:30 A.M. the school bus returns the child to the Bennett home where she is cared for until about 3:00 o'clock, when her father calls for

her and takes her to his home on Hay Street. Perma Seiple returns from work about 4:15, prepares the evening meal and helps to attend Roxanne until the time to return her to Mrs. Bennett's home. The child remains in the Seiple home from Friday afternoon until Sunday evening. Richard and Perma Seiple have provided a complete wardrobe for Roxanne in both the Seiple and Bennett homes. From the testimony it appears that she has an abundance of appropriate clothing and toys. Roxanne appeared to be a well developed, healthy and well adjusted child".

This appeal does not involve any unusual problems, and merits only brief discussion. Appellant advances four contentions which may be correlated and summarized in the proposition that the court below erred in awarding custody to the father. In our opinion filed this day in *Commonwealth ex rel. McKee v. Reitz*, 193 Pa. Superior Ct. 125, 163 A. 2d 908, we have restated the applicable legal principles, and they need not be here repeated at length. Suffice it to say that the paramount consideration is the best interest and welfare of the child, and all other considerations are subordinate.

Appellant's first two contentions may be treated together. It is argued (1) that the well-being of the child would not be adversely affected by granting custody to the mother; and (2) that there is an absence of compelling reason to award custody of the child to the father rather than to the mother. The question to be determined is with which parent will the welfare of the child be best served. The child is presently well cared for in its father's custody. He and his second wife desire to adopt the child, but appellant refuses to consent. The mother has not had custody since May 30, 1958. At the age of 28, she has been married three times in less than ten years, the first two marriages having been dissolved by divorce. Her present husband

is only 23 years of age. Appellant's marital history tends to disclose an instability of personality which speaks for itself.[1] While it has been generally held that, other factors being equal, a child of tender years should be with the mother, this rule is by no means absolute. Each case must finally rest upon and be determined by its own facts. The able opinion of Judge WOODRING in the case at bar completely justifies the conclusion which he reached.

It is also argued (3) that the father and his present wife are both employed and that custody is actually shared with the great-grandmother. While this is admittedly true, the joint labor produces a monthly income in excess of $500.00, and permits the maintenance of a desirable standard of living. Appellant and her present husband live in a four-room house consisting of a kitchen, living room, and two bedrooms. Her child by Garinger is presently not in the home but, according to her testimony, she expects to share its custody. McLeod has a monthly income of $208.00. He has known nothing other than life in the air force, and his future prospects, following discharge, are uncertain. Although the child might be supervised by the natural mother if custody was awarded to appellant, there is no lack of proper supervision under the present arrangement. With regard to the relationship between Richard, his second wife, and the child, a disinterested witness testified: "I have never seen a closer knit family". The program now in operation has been carried out successfully over a considerable period of time, and we are not persuaded that it would be wise to effect any change.

---

[1] Appellant's second husband, Zane Firman Garinger, testified as to appellant's unfitness as a mother. However, the court below assigned little weight to this testimony, and our decision in no way rests upon it.

Finally, it is argued (4) that consideration should not have been given to the fact that appellant would remove the child to Florida. On the contrary, while this factor is not controlling, the hearing judge was fully warranted in pointing out that the award of custody to the father will permit the child to be "reared in her native area of Easton in which she is richly blessed with close relatives on both the paternal and maternal sides". Only unusual circumstances can justify the placing of a child beyond the jurisdiction of the court: *Commonwealth ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 13 A. 2d 886. In the words of Mr. Justice BELL in *Shoemaker Appeal,* 396 Pa. 378, 152 A. 2d 666: "If all other factors are approximately equal, the Courts should prefer a resident to a nonresident guardian and custodian, since the former is more amenable to the Court's continuous watchful eye, supervision and control".

In summary, quoting from the opinion below: "The record is replete with evidence of love and affection and parental devotion for the child. Her physical, mental and spiritual welfare have been carefully considered and nurtured. Perhaps within the scope of her memory the only home which Roxanne knows is her father's home in which she is now happily situated and well adjusted . . . We are of the opinion that the best interest and permanent welfare of Roxanne will be best served if she remains in her father's care, and the present living arrangements which have been conducive to the happiness and well being of the child are continued".

Order affirmed.