Commonwealth ex rel. McKee, Appellant, *v.* Reitz.

Argued June 14, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and MONTGOMERY, JJ. (WATKINS, J., absent).

*William J. McKnight,* for appellant, submitted a brief.

*William A. Sykes,* with him *John E. Aikman,* for appellees.

OPINION BY WRIGHT, J., September 16, 1960:

We are here concerned with a controversy involving the custody of Scott Lee Reitz, presently aged fourteen years. The caption discloses that the contesting parties are the child's mother and his paternal grandparents. However, the child's father, divorced and remarried, lives in close proximity to the home of his parents and supports their claim. The original order below, dated October 20, 1955, awarded custody to the paternal grandparents. Subsequently, on February 9, 1959, a rule was issued to show cause why the order should not be changed. Following the taking of additional testimony, President Judge MORRIS, on August 24, 1959,

continued his original order in full force and effect. This appeal followed. The factual situation appears in the following excerpt from the opinion below:

"The Relatrix was first married to Donald Reitz on July 5, 1944. To them were born three (3) children, namely, Donald James, now aged fifteen, Scott Lee, aged thirteen and a half, born July 3, 1946, and Dennis Wayne, aged eleven. This marriage ended in a divorce. The plaintiff in that action was the husband and the grounds for divorce were based upon indignities to the person. . . The second marriage of the Relatrix was to Clyde McKee, which also ended in a divorce in 1956 (December 18, 1956). Her last and presently subsisting marriage (May 20, 1957) is with Floyd Bishop. The Relatrix, her husband and the two children live in Buffalo, New York.

"Donald Reitz, the father of Scott Lee Reitz, the subject of this petition, remarried some two years after obtaining his divorce from the Relatrix in 1950. It has been a happy marriage. He has been steadily employed by the Hanley Brick Company at Summerville, Pennsylvania, and since 1954 has been sending to the Relatrix, $40.00 per month for the support of the other two boys. Donald Reitz and his wife and family live within a stone's throw of the grandparents' home and visit back and forth daily.

"Scott Lee, from the time of his birth up to 1949, when he was about two and one-half years old, lived with his mother on Zeitler Avenue in Punxsutawney, Pennsylvania. Because of his mother's conduct and generally bad home conditions, the father removed the child from that home and took him to the home of the Respondent grandparents where he was living at the time. Since 1949, Scott Lee has continuously and without interruption lived and made his home with his grandparents. He knows no other home. During all

this time he has had little or no contact with his mother—practically none from 1949, when he went to his grandparents' home, until 1955, the time of the first hearing, and since then only once or twice to the present time. His mother and brothers are strangers to him. His parental ties and relationships have been those of his father, his paternal grandparents and with half brothers and sisters, the children of his father's second marriage. He knows no others and to them he is strongly attached through bonds of love and affection. When he became of school age he attended the township schools and is now attending the Punxsutawney Junior High School. There is no question in the Court's mind as to the home of the Respondents being a good, Christian home and one in which he is receiving the love, affection, care and guidance so necessary in the rearing of a child".

The applicable legal principles are well settled, and were summarized in *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 138 A. 2d 225, as follows (citations omitted) : "While natural parents have the primary right to a child's custody, there is no fixed and invariable rule that a natural parent, even though of good moral character, is entitled to custody under all circumstances. Each case must finally rest on and be determined by its own facts. . . The right of natural parents is not absolute and must yield to the best interests and welfare of the child. . . A parent's prima facie right to custody may be forfeited if convincing reasons appear that the best interests of the child will be served by awarding custody to someone else. . . The custody of a child is not a property right . . . and the matter must be viewed with relation to the happiness, training, development, and moral, physical and spiritual well-being of the child. . . The paramount consideration is at all times the welfare of the child, and all other considerations are subordinate".

We have carefully reviewed this entire original record. The testimony at the hearing on October 20, 1955, fully supports the conclusion of the court below that the child should not then be awarded to the mother, and contains an understandable explanation of the father's decision to take only the one child. There was no appeal from the original order. At the hearings of June 8 and 29, 1959, the mother adduced testimony to the effect that she was presently conducting herself properly, and now has an adequate home. Conceding this to be true, it does not of necessity control the result. Appellant's position is thus stated: "I think the children should be together".

The argument that children of the same family should not be separated has natural appeal and is entitled to considerable weight, particularly where other factors are in reasonable balance. See *Commonwealth ex rel. Reese v. Mellors,* 152 Pa. Superior Ct. 596, 33 A. 2d 516. However, there is no fixed or invariable rule which applies. The paramount question to be determined is what will best promote the welfare and interests of the child. This controlling principle has been so uniformly recognized by our appellate courts that extended citation of authority would be redundant. It encompasses every fact, detail and circumstance of the child's life, his past history and surroundings. As Mr. Justice BELL recently said in *Shoemaker Appeal,* 396 Pa. 378, 152 A. 2d 666; "In determining what are the best interests and welfare of the child, all the circumstances which may affect that determination are admissible, including, inter alia, the character and fitness of the petitioners, their respective homes, their ability to take adequate care of as well as to financially provide for the child, their church affiliations, and every factor which may affect the physical, mental, moral and spiritual well-being of the child". It is pre-

cisely for this reason that each case must finally rest upon and be determined by its own facts. Consideration must be given to the age of the child and the length of time during which it may have resided in the home of the particular respondents.

The factor last mentioned becomes especially important in the case at bar. Here we have a boy of fourteen years who has known no other home since he was two and one-half years old. Where a child has been reared under such circumstances, it is important to consider the emotional effect of ordering a change of environment. See *Commonwealth ex rel. Newel v. Mason,* 186 Pa. Superior Ct. 128, 140 A. 2d 365. This boy expressed an emphatic desire to remain with his grandparents. He was not even willing to visit in Buffalo for a short time in order "to get acquainted with them". The following statement in the opinion below is significant: "This attitude on the part of the boy is unfortunate but on the basis of the testimony is quite understandable and the blame for such a condition, we believe, can squarely be placed on the Relatrix". It is well settled that the preference of an intelligent child of sufficient maturity is to be considered in determining custody: *Cochran Appeal,* 394 Pa. 162, 145 A. 2d 857; *Commonwealth ex rel. Gregory v. Gregory,* 188 Pa. Superior Ct. 350, 146 A. 2d 624; *Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437.

It should also be emphasized, as initially indicated, that this child is actually not being separated entirely from parents and family. He associates constantly with his father, and with the father's children by his second wife. The father voluntarily contributes to the boy's support and stands ready, with his wife's full approval, to eventually take the child into his home. From a practical standpoint, as the father stated: "He is the

same as in my custody now". We are unhesitatingly of the opinion that the present relationship should not be disturbed.

One incidental matter should be mentioned. As indicated in his able opinion, President Judge MORRIS was not unmindful of appellant's right to visit the child. He states: "This phase was not brought out or discussed with the court". The right of visitation is a matter which should preferably be determined by stipulation of the parties. If the parties in the instant case cannot come to a reasonable agreement, an appropriate supplemental order may be entered by the court below.

Order affirmed.