Commonwealth ex rel. Johnson *v.* Johnson,
Appellant.

Argued April 10, 1961. Before ERVIN, WRIGHT,
WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.
(RHODES, P. J., absent).

*Herbert B. Lebovitz,* for appellant.

*Byrd R. Brown,* with him *Utterback and Brown,* for appellee.

OPINION BY WRIGHT, J., June 15, 1961:

We are here concerned with a controversy involving the custody of Alonzo Johnson, Jr., presently aged six years. While the caption discloses that the contesting parties are the child's parents, the dispute is largely between the child's mother and his paternal grandmother. The court below awarded custody to the mother, and directed that the father should have appropriate visitation rights. The father appealed to this court, and we granted a supersedeas.

Alonzo Johnson, Jr. was born on January 16, 1955, his parents being Alonzo and Gwendolyn Johnson. At the time of the birth of the child his parents were living in the five-room home of Alonzo Johnson's mother, Ellen Louise Johnson, which home was also occupied by six of the father's brothers and sisters. Marital difficulties ensued and Gwendolyn left in May, 1955. A reconciliation was effected shortly thereafter, and Alonzo and Gwendolyn moved with the child into an apartment by themselves where they lived together for several months. Further difficulties arose, resulting in the termination of the marital relationship, and the parents never again lived together as man and wife. Gwendolyn asserted that Alonzo would not work and was physically abusive. Following the final separation, Gwendolyn took Alonzo, Jr. to the home of her parents. Shortly thereafter, in Gwendolyn's absence, Alonzo removed the child to the home of his mother. At that time Gwendolyn was again pregnant. A female child, LaVon Johnson, was born on February 14, 1956, and has been continuously in Gwendolyn's custody.

The record discloses a considerable procedural history, which it is unnecessary to set forth in detail. Suffice it to say that the initial proceeding was a support action by the mother on November 16, 1955, which resulted in an order of $10.00 per week for the support of Gwendolyn and Alonzo, Jr. After the father took the child, Gwendolyn made several attempts to regain custody. There were also a number of attachments for non-payment of the support order. On February 7, 1957, Alonzo was ordered to pay $10.00 per week for the support of LaVon, and the custody of Alonzo, Jr. was awarded to the father with visitation rights in the mother. According to appellee's brief, this was the result of a hearing at side bar, of which no record was made and at which Gwendolyn was not represented by counsel. Subsequently Gwendolyn attempted to obtain a review of the custody question. Her petition was listed for hearing three times, but was eventually withdrawn. On May 31, 1960, after extended negotiations had failed, Gwendolyn filed another petition to obtain custody. On September 28, 1960, there was for the first time a reported hearing in the matter, and Judge McBRIDE entered the order from which the instant appeal has been taken.

The legal principles governing cases of this nature are well settled, and may be briefly restated. The paramount question to be decided is what will best promote the welfare and interests of the child: *Commonwealth ex rel. McLeod v. Seiple*, 193 Pa. Superior Ct. 131, 163 A. 2d 912; *Commonwealth ex rel. Mitchell v. Mitchell*, 186 Pa. Superior Ct. 347, 142 A. 2d 304. While each case must rest upon its own factual situation, *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 138 A. 2d 225, it has been repeatedly held that, in the absence of compelling circumstances, the welfare of children of tender age is best promoted by giving custody of them to the mother: *Urbani v.*

*Bates,* 395 Pa. 187, 149 A. 2d 644; *Commonwealth ex rel. Gervasio v. Gervasio,* 188 Pa. Superior Ct. 95, 145 A. 2d 732; *Commonwealth ex rel. Mann v. Mann,* 181 Pa. Superior Ct. 438, 124 A. 2d 432. Also pertinent in the instant case is the proposition that children of the same family should not be separated without good reason: *Commonwealth ex rel. Reese v. Mellors,* 152 Pa. Superior Ct. 596, 33 A. 2d 516.

Appellant's contentions are stated as follows: "1. The welfare of the child dictates that he should remain with his grandmother. 2. The circumstances in this case do not justify a modification or change of a custody order. 3. The Court erred in changing the custody order solely for the reason that 'the children shall be together' ". In sum, these three contentions present the same issue, and we deem it unnecessary to discuss them separately or at length.

At the hearing on September 28, 1960, the witnesses were the child's parents and the paternal grandmother. Gwendolyn lives in a four-room apartment in St. Clair Village, a public housing community in the City of Pittsburgh. It is not disputed that Gwendolyn is a good mother, that she maintains a fine home for herself and LaVon, and that this home is well suited also to the rearing of Alonzo, Jr. The paternal grandmother lives in a five-room apartment in Talbot Towers, also a public housing community. Appellant is no longer a member of his mother's household, having moved away some seven months before the hearing. Two of appellant's sisters and one brother still live with their mother. She is employed two days a week and, when she is at work, her daughter must care for Alonzo, Jr. Appellant is a professional boxer, who has been listed as a ranking contender for the heavyweight championship, and is away from the Pittsburgh area for considerable periods. He has no employment other than his boxing engagements. His testimony as

to his income was indefinite and unsatisfactory. He apparently gives his mother $10.00 a week for the support of Alonzo, Jr., but he has almost completely neglected LaVon. As of May 31, 1960, he was $2,364.25 in arrears on the support order.

Appellant relies primarily on *Commonwealth ex rel. McKee v. Reitz,* 193 Pa. Superior Ct. 125, 163 A. 2d 908, wherein we affirmed an order awarding custody of a fourteen year old boy to his grandparents. That case may be readily distinguished. Counsel for appellant also argues that the custody of Alonzo, Jr. was determined by the order of February 7, 1957, and that there has been no material change in circumstances, citing *Commonwealth ex rel. Crawford v. Crawford,* 170 Pa. Superior Ct. 151, 84 A. 2d 237. In practical effect, however, the father has now surrendered custody of the child to its grandmother. Custody orders are temporary in nature and may always be modified to meet changed conditions: *Commonwealth v. Bishop,* 185 Pa. Superior Ct. 362, 137 A. 2d 822. While it is stated in appellant's brief that Alonzo, Jr. expressed a desire to remain in his grandmother's home, there is nothing in the record to support such an assertion. In any event, the preference of a child so young (five years of age at the time of hearing) would be entitled to little weight. Finally, an examination of the opinion below reveals that the decision was not reached solely for any one reason, but was based upon a thorough consideration of all of the factors in the case.

Having reviewed this record in the light of the applicable legal principles, and having evaluated the relative change of position and circumstances of the parties, we are all of the opinion that the court below did not err in determining that the welfare and interests of this child will best be promoted by awarding custody to his mother.

Order affirmed.