341 A.2d 51.

CLAIRE GOLDSTEIN *vs.* EDWARD GOLDSTEIN.

JULY 17, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This domestic relations matter is here on a wife's appeal from a Family Court decree continuing the custody of Ann Robin, the parties' 9½ year-old daughter, in the husband.

The case has its roots in an August 4, 1970 decision and decree granting the husband's cross-petition and denying the wife's petition for divorce, and awarding custody of Ann Robin to the husband and visitation rights to the wife. Shortly after the entry of that decree the husband and child left Rhode Island to reside in Israel. The wife thereupon initiated a series of proceedings designed to compel the return of the child to this state and to modify the August 4, 1970 decree so that she, rather than her husband, might have custody. Aided by cooperation of

the Supreme Court of Israel, she finally succeeded in part, and in July 1973 the husband and child returned to this state, almost 3 years after their departure, and appeared in court.

Following an in-chambers conference, the trial justice determined that an attempt to reestablish a mother/ daughter relationship was advisable and therefore ordered the child to be placed with her mother pending a custody hearing. At that hearing, which took place on August 30, 1973, the following transpired: the parties stipulated that both were fit to have custody of the child and to care for her needs; there was incorporated into the record psychiatric evidence disclosing, in the language of the trial justice, that "* * * Ann is a very intelligent 9½ year-old girl who has had more burdens placed upon her at a very young age than most youngsters, and that she has been able to cope with those problems and suffers no emotional damage as a result of having to bear those burdens"; at the wife's request the trial justice took judicial notice of the threat of war and terrorist activity in Israel; he also took notice, upon his own motion, that this country has been engaged in more violent wars than Israel during the past 25 years and that "there's an awful lot of violence here"; and the wife presented testimony that the child, although reared in the Jewish religion, would not be considered a member of that faith under Jewish law until she had been converted as had her mother.

No further evidence was presented by the parties, and the trial justice thereupon engaged Ann Robin in conversation. He did so initially in open court, but the child said that it was difficult for her to say with which parent she wished to reside. When they talked further in chambers, however, she said that although she could not say so in her parents' presence, she loved her father more than her mother and wanted to go to Israel with him. She also

said that she had no desire to visit with her mother but agreed, after the trial justice's urgings, that it would be a "fair bargain" if he were to condition her being allowed to live with her father in Israel upon her visiting willingly with her mother for 4 weeks during each summer.

At the conclusion of this conversation the trial justice related to the parties and counsel what he had been told in chambers and announced that in his judgment it was in the child's best interests for her to remain in the father's custody, for the father to be authorized to take her to Israel, and for her to visit with her mother for 4 weeks during the summer months. He said further that the father should be required to pay the transportation costs of those visits and to post a $1,000 bond to insure that he did so, and that the question of custody and visitation should be reviewed following the 1975 visitation. Those findings and orders were incorporated in a decree entered on the same day, and it is from that decree that this appeal has been taken.

There can be no question that this record discloses a sufficient change in the circumstances affecting the child's custody to permit a reopening of the August 1970 decree awarding custody of the child to the father. That being so, the polestar for the trial justice's guidance was what in the circumstances of this particular case was best for the welfare of this 9½ year-old girl. *Vieira* v. *Vieira,* 98 R. I. 454, 204 A.2d 431 (1964); *Kelley* v. *Kelley,* 77 R. I. 229, 74 A.2d 452 (1950).

The wife agrees with this broad principle but argues that the trial justice, instead of considering all the circumstances of the case, allowed the child's choice to control his decision, and in doing so, she contends, he disregarded such factors as the policy favoring the awarding of young children, especially girls, to a fit mother, *Loebenberg* v *Loebenberg,* 85 R. I. 115, 120-21, 127 A.2d 500, 503

(1956); *McKim* v. *McKim*, 12 R. I. 462, 465 (1879), the preference sometimes given to a resident parent when both are equally fit, *Gillespie* v. *Gillespie*, 40 Hawaii 315, 321 (1953); *Butler* v. *Perry*, 210 Md. 332, 342, 123 A.2d 453, 457-58 (1956), and legislative policy[1] that a minor should be allowed to nominate his own guardian only if he is at least 14 years old and, even then, only if his choice receives Probate Court approval.

It is true that the trial justice did not specifically refer to those factors in his bench decision. Even if he ought to have considered them, however, and failed to do so, that oversight alone would not be controlling. That is so because those factors would have simply been placed on the scales together with the other relevant considerations weighed by the trial justice, such as the parties' equal suitability to have the child's custody, the psychiatric evidence of the child's emotional stability and intelligence, the trial justice's opportunity to observe her demeanor, appearance, and attitude, and his obvious conclusion therefrom that her expressed desire to be with her father was not a mere whim and was entitled to substantial weight.

In evaluating the trial justice's decision, we are also influenced, in part, by his extreme solicitude that the child be a willing participant in the wife's exercise of her visitation rights and his further concern that the entire question of custody and visitation rights be reexamined in August of this year.

In the light of all these circumstances, it seems to us that the factors favoring the awarding of custody to one or the other of the parents, for a 3-year period, were so nearly in a state of equipoise as to make it extremely difficult for the trial justice to decide between them. That being so, it does not seem to us that he abused his dis-

---

[1]General Laws 1956 (1969 Reenactment) §§33-15-4 and 33-15-5.

cretion when he gave substantial weight to the child's preference. *See King* v. *King,* 114 R. I. 329, 332, 333 A.2d 135, 137 (1975); Annot., 4 A.L.R. 3d 1396 (1965).

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Family Court for further proceedings.

*Richard B. Tucker,* Rhode Island Legal Services, for petitioner.

*Raymond J. Surdut,* for respondent.