## Scheeler v. Rudy

*William H. Kaye,* for petitioner.
*Thomas M. Painter,* for respondent.

KELLER, *J.,* July 28, 1977—The petition of Donna L. Scheeler for the custody of her two minor children was presented to the court on May 9, 1977. An order was entered directing that a rule issue upon Monte E. Rudy, respondent and father, to show cause why custody of the two children of the (never married) parties should not be confirmed in petitioner. Pending confirmation of the rule, temporary custody of the children was placed

in petitioner. An answer was filed on June 9, 1977 by respondent. Hearing was held on June 13, 1977. Briefs were submitted by counsel on June 20, 1977, and the matter is ripe for adjudication.

## DISCUSSION

The law of parental rights in regard to actions for custody of children has recently undergone dramatic changes in Pennsylvania. The long established and time honored "tender years doctrine," which states that the right of the mother to the custody of the child, in the absence of a showing that she is unfit to be entrusted with the child's care, is superior to that of all others, including the father, has now been laid to rest. The Pennsylvania Supreme Court, in Commonwealth ex rel. Spriggs v. Carson, 470 Pa. 290, 368 A.2d 635, 639-640 (1977), concluded that the tender years doctrine is "offensive to the concept of the equality of the sexes which we have embraced as a constitutional principle within this jurisdiction . . . Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of 'presumptions'. Instead, we believe that our courts should inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case then before the court."

More specifically, recent decisions dictate that we re-evaluate the law regarding parental rights to custody of illegitimate children. The old rules were clearly stated in several cases.

"A father of an illegitimate child is not legally related to it and the law recognizes the right of the mother to its custody." Commonwealth ex rel.

Kevitch v. McCue, 165 Pa. Superior Ct. 49, 51, 67 A.2d 582 (1945).

"[T]he general rule has been that the right of the mother to the custody of an illegitimate child, is superior to that of all other persons for, ordinarily, the best interests of the child can be served by maternal care." Latney's Appeal, 146 Pa. Superior Ct. 20, 21, 21 A.2d 521 (1941). See also Davis v. Bennett, 34 Del. Co. 136 (1946); Commonwealth ex rel. Gifford v. Miller, 213 Pa. Superior Ct. 269, 248 A.2d 63 (1968).

In Adoption of Walker, 468 Pa. 165, 360 A.2d 603 (1976), Justice Roberts found that, since the adoption of the Equal Rights Amendment (Article I, sec. 28 of the Pennsylvania Constitution), the provision of section 411 of the Adoption Act of July 24, 1970, P. L. 620, P. S. § 411, that the consent of the natural father of an illegitimate child shall not be required for the child's adoption, is constitutionally invalid.

"Thus, section 411 of the Act, denies unwed fathers important substantive and procedural rights because his consent to adoption is not statutorily required. This distinction between unwed mothers and unwed fathers is patently invalid under the Pennsylvania Constitution." Walker, supra, at p. 170, and p. 605. See also Stark Adoption, 75 D. & C.2d 733 (1976).

The court in Walker, supra, cites, at p. 171, and p. 606, n. 11, a United States Supreme Court case which further bolsters and upholds the rights of natural fathers of illegitimate children. In Stanley v. Illinois, 405 U.S. 645, 649, 92 S. Ct. 1208, 1211, 31 L. Ed.2d 551 (1972), the court held: "that, as a matter of due process of law, [an unmarried father]

was entitled to a hearing on his fitness as a parent before his children were taken from him and that, by denying [the unwed father] a hearing and extending it to all other parents whose custody of their children is challenged, the State denied [the unwed father] the equal protection of the laws guaranteed by the Fourteenth Amendment."

After careful consideration of these recent changes in the law, we now find that, where an unwed father admits and asserts his paternity of the illegitimate child or children in question, he shall have equal standing in the eyes of the law with the mother of such children to be considered for custody of them. As stated by Justice Nix in Spriggs, supra, at p. 637: "It is now beyond dispute that the sole issue to be decided in a custody proceeding between contending parents is the best interests and welfare of the child." (Citations omitted.)

We note, at the outset of this opinion and order, that the evidence shows that both parties are loving parents devoted to their children. Both are hard workers quite willing to apply their income to the maintenance of the children and their homes. Both could provide adequate housing for the children. Therefore, neither are disqualified as a person unfit to be entrusted with the care of the children.

There are several factors, of varying importance, to be considered in the case at bar. None of them is, in itself, controlling; instead the cumulative weight will be determinative of which party is to be awarded custody of the subject children.

While the tender years doctrine has with justification been laid to rest: Spriggs v. Carson, supra;

there remains another guideline for custody proceedings which is frequently confused or intermingled with the discredited tender years doctrine. This guideline is well described by Judge Hoffman in his dissenting opinion in Commonwealth ex rel. Zeedick v. Zeedick, 213 Pa. Superior Ct. 114, 118-119, 245 A.2d 663 (1968): "The age and sex of the child is a keystone factor in any custody determination. In this case, we are dealing with young daughters. Our Court has, in such cases, followed a time-honored rule that the care and custody of a child of tender years, especially if the child is a girl, should be committed to the mother. Urbani v. Bates, 395 Pa. 187, 149 A.2d 644 (1959); Commonwealth ex rel. Horton v. Burke, 190 Pa. Superior Ct. 392, 154 A.2d 255 (1959). Our Court affords great credence to this concept because experience has taught us that young girls need maternal care and affection. A mother can explain the processes of maturation and sexual knowledge to growing daughters better than a father. Experience has also taught us that a girl's psychological and social adjustments to her environment are more easily made through the confidence of a mother-daughter relationship. As a result of this knowledge, we have often reiterated that, absent compelling reasons, the needs of a daughter of tender years are best served by awarding custody to the mother. Commonwealth ex rel. Keller v. Keller, 90 Pa. Superior Ct. 357 (1927); Commonwealth ex rel. Blatt v. Blatt, 168 Pa. Superior Ct. 427, 79 A.2d 126 (1951)."

We believe that this guideline remains viable, regardless of the demise of the tender years doctrine, by reason of its logic and the weight of experience.

It might be argued that the converse of the above-stated rule is also true, i.e., that a young boy's maturation and adjustment would best be furthered by a father's care and guidance. This may well be at least partially true, but we feel that it is outweighed by other considerations. First, it has been our experience that boys adjust more easily to the processes of physical maturation than do their female counterparts. This would seem to be true chiefly because boys generally mature at a slower pace.

Second, and most important, is the general rule that, whenever possible, it is highly preferable that brothers and sisters be raised together and not split up.

"The argument that children of the same family should not be separated has natural appeal and is entitled to considerable weight, particularly where other factors are in reasonable balance. See Commonwealth ex rel. Reese v. Mellors, 152 Pa. Superior Ct. 596, 33 A.2d 516." Commonwealth ex rel. McKee v. Reitz, 193 Pa. Superior Ct. 125, 129, 163 A.2d 908 (1960).

Mr. Justice Musmanno, in Urbani v. Bates, 395 Pa. 187, 189, 149 A.2d 644 (1959), states his thoughts on the issue as follows: "One improvement on the historical Solomonic decision would be to divide the children, one to each parent, but that would be an expediency as unjust as the threatened division by sword."

Monica and little Monte appear to enjoy a close relationship, and we believe it would do them a great disservice to separate them. Their home and family life has, unfortunately, been severely disrupted by the change in the relationship of their

parents and we will attempt to further disrupt their lives no more than necessary.

Also to be considered is the fact that the petitioner's two older daughters live with her at her mother's house. Monica explicitly expressed her desire to live with her mother at her grandmother's house because she likes to be with her two half-sisters. The presence of other older children, to whom the subject children feel close, in the home provides another needed stabilizing factor for the children in their period of adjustment.

We note that the grandmother, Mrs. Potts, is a mature, good-natured widow experienced in handling children and who has a good relationship with the petitioner, her daughter, and the subject children. She has made them all welcome in her home indefinitely. She testified that the children have adjusted well and are not like strangers in the home. She is available to care for the children during petitioner's working hours.

The fact that both children indicated that they wished to live with their mother is a point to be weighed by the court, but is not controlling. In a case from this county, Judge Depuy stated the law as follows: "This Court has never taken the view that the wishes of children in custody suits preferring one parent to the other are controlling. Depending upon the age of the child and the extent to which the child's views are well founded, the Court may properly give weight to them." Com. ex rel. Humphreys v. Hess, 11 Cumb. 33, 40 (1960). Representative cases have held that five years old: Common. ex rel. Johnson v. Johnson, 195 Pa. Superior Ct. 262, 171 A.2d 627 (1961); and four years old: Common. ex rel. Maines v. McCandless,

175 Pa. Superior Ct. 157, 103 A.2d 480 (1954); are too young to be entitled to much weight. In the case at bar, Monica six and a half and little Monte is nearly five.

As to whether the children's views were well-founded, and so entitled to consideration, little Monte's views were vague and his primary reason for wanting to live with his mother, petitioner, was because he had lived with his father, the respondent, "for a long time." He testified that he would like to live with both of them. His preference can be largely discounted, but the same is not true of Monica's wishes. She was very explicit in her desire to live with her mother. In addition to the fact that her two half-sisters are there, as discussed above, Monica wants to live with petitioner because petitioner has evenings free to be with her and little Monte, petitioner takes her to the carnival, and respondent did not have time to take them away. Monica also stated that she didn't like it as much with her father because she was the only girl there.

Monica's testimony and preference are important because they point out the fact that petitioner has arranged her work schedule so that she has evenings free to be with the children. The same is not true of respondent, who works an average of one or two nights a week as a bartender on an "on call" basis. If the children were placed in the father's custody, they would be placed more often in the care of a babysitter. Respondent's industriousness is, in nearly all respects, a most admirable trait. However, in the situation here being considered, it is carried to the point at which it would quite possibly work to his children's detriment.

Respondent's drinking habits are also a factor to

be considered. There was conflicting testimony as to the extent of his drinking, and we do not find that respondent is a "heavy drinker," or that he has a "drinking problem." However, the fact that he admitted that there were occasions on which he came home intoxicated is given some weight in our determination.

A more important consideration is the religious training of the children. Respondent stated that he left the religious education of the children to Mrs. Wolford, the babysitter. Mrs. Wolford testified that she has seen petitioner in church at times, and that petitioner sends the children even when she does not herself attend. There was also testimony that respondent said he was too busy to get to church.

This court has often noted the absence of any regular church attendance in the pre-sentence reports of those who have been convicted of some crime, which appear on our desk. We believe that a religious education and upbringing can have a substantial effect upon the outlook and attitudes of a child, and in turn upon the life of the adult he or she will become. This point was noted in Commonwealth ex rel. Bordlemay v. Bordlemay, 31 D. & C.2d 46, 51 (1963), in which it was said: "One final consideration worthy of note is the husband's attention to the child's spiritual training. He attends church regularly and takes the child to Sunday School. On the other hand, the wife does not attend church. While religious considerations are not necessarily controlling, they should be given consideration: Commonwealth ex rel. Shamenek v. Allen, 179 Pa. Superior Ct. 169."

This point was again noted by the court on ap-

peal, where it was held that the law had been properly applied to the facts, and the award of custody to the father was affirmed: Commonwealth ex rel. Bordlemay v. Bordlemay, 201 Pa. Superior Ct. 435, 193 A.2d 845 (1963).

That the home which would be provided by the mother is not as large and the children would not each have his or her own bedroom is of little importance. It is settled law that a party should not be deprived of custody merely because a better home in physical aspects or a higher standard of living can be provided elsewhere: Commonwealth ex rel. Holschuh v. Holland-Moritz, 448 Pa. 437, 292 A.2d 380 (1972); Commonwealth ex rel. George v. George, 167 Pa. Superior Ct. 563, 76 A.2d 459 (1950). Likewise, the fact that respondent has a higher income than petitioner is not deserving of much weight; both are able to financially provide adequate support for the children: Commonwealth ex rel. Andresky v. Andresky, 40 Wash. 101 (1960).

The considerations that must be made in a custody case were well summarized by Mr. Justice Bell in Shoemaker Appeal, 396 Pa. 378, 381, 152 A.2d 666, 668 (1959), when he wrote, "It is well settled that the paramount and controlling concern—the polestar—in every child custody case is the best interests and welfare of the child . . . (citations omitted). In determining what are the best interests and welfare of the child, all the circumstances which may affect the determination are admissible, including, inter alia, the character and fitness of the petitioners, their respective homes, their ability to take adequate care of as well as to financially provide for the child, their church affiliations, and every factor which may

affect the physical, mental, moral, and spiriutal well-being of the child."

After weighing and analyzing the facts in the case at bar, we conclude that the best interests and welfare of Monica Rudy Scheeler and Monte Edward Scheeler require us to award custody to petitioner, Donna Lee Scheeler. Where both parents love the subject children and are capable of providing them with a home, our determination and decision is made much more difficult. We find that the facts show that the petitioner offers a more stable home atmosphere, and for that reason she is awarded custody.

Since neither party introduced any evidence concerning visitation, and it appears the parties have been able to work out satisfactory visitation arrangements in the past, we will not at this time include in the order of court any provisions for visitation rights. It has long been the policy of this court to favor reasonable visitation rights for the parent out of custody, and we do urge the parties and their counsel to seek to work out a reasonable and realistic visitation schedule for the benefit of their children. If the parties are unable to reach an amicable agreement on visitation, the court will entertain an application for hearing as promptly as possible and enter an appropriate order.

## ORDER

Now, July 28, 1977, the petition of Donna L. Scheeler is granted. Primary custody of Monica Rudy Scheeler and Monte Edward Scheeler is granted to their mother, Donna L. Scheeler.

Exceptions are granted respondent.