389 A.2d 1242.

MARY LEE MCCULLOUGH *v.* ROBERT HUDSPETH.

AUGUST 3, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J. This is a dispute between divorced parents over the custody of their minor child, Scott, who was nearly 10 years old when the case was heard in Family Court. The case is here on the father's appeal.

On March 23, 1967 the parties were divorced in Mississippi.

Custody of Scott, the only child of the marriage, was awarded to the mother, and the father was given visitation rights. At the time of the Family Court hearing, Scott lived in Providence with his mother, her second husband and their daughter, while the father resided alone in Santa Fe, New Mexico.

In 1972-73, disagreements between the parties concerning the father's alleged abuse of his visitation rights led the mother, who was then a Massachusetts resident, to initiate custody proceedings in Pennsylvania where the father then resided. Those proceedings were concluded by an order of the Orphan's Court Division of the Court of Common Pleas of Delaware County, Pennsylvania, which incorporated a stipulation wherein the parties spelled out the father's visitation rights and agreed that each of them would deposit $500 in an escrow account to ensure good faith and compliance.

Sometime after entry of that order, the father moved to New Mexico. Visitations in subsequent years apparently were amicable until the visit scheduled for Christmas 1975. That visit was prevented by an ex parte restraining order entered by the Family Court in response to the wife's petitioning that court to reaffirm her custody of Scott, and to require the father to post a bond "or some other form of security" to ensure Scott's return to this state. The father countered with a motion seeking custody of Scott, an order of contempt against the mother for alleged failures to abide by the Pennsylvania order, forfeiture of the mother's $500 in the Pennsylvania escrow account, "a substantial performance bond and/or cash" from the mother to ensure her compliance with his future visitation rights, and other relief which need not be detailed here.

At the conclusion of a 3-day Family Court hearing at which both parties testified about various disagreements which allegedly had arisen concerning the father's visitation rights with Scott, the court denied the father's motion; reaffirmed custody of Scott with the mother; modified the visi-

tation provisions of the Pennsylvania order, subject to further review if the the father should move to Rhode Island; and, as a condition for out-of-state visitation with Scott, directed the father to post a $10,000 cash bond to assure the child's safe return to Rhode Island. The father challenges only the requirement that he post a bond, and he does so on three grounds.

The father argues, first, that the full faith and credit clause of the Federal Constitution precluded the Family Court from modifying the Pennsylvania order.[1] Although this clause commands our courts to give the judgment of a sister state full credit, it does not confer upon that judgment a constitutional claim to a more conclusive effect in our courts than it would have in the courts of the state where rendered. In short, "the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." *New York ex rel. Halvey* v. *Halvey*, 330 U.S. 610, 615, 67 S. Ct. 903, 906, 91 L. Ed. 1133, 1136 (1947). *Accord, Ford* v. *Ford*, 371 U.S. 187, 192, 83 S. Ct. 273, 276, 9 L. Ed. 2d 240, 244 (1962). *Compare, Culpepper* v. *Martins*, 96 R.I. 328, 333, 191 A.2d 285, 288 (1963).

In this case our reading of Pennsylvania law convinces us that there, as here,[2] child custody orders are temporary in nature and are always subject to modification to meet

---

[1]Article IV, §1 of the Federal Constitution provides that:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved and the Effect thereof."

Congress by the Act of May 26, 1790, ch. 11, as amended, 28 U.S.C.A. §1738 declared that judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

[2]*Goldstein* v. *Goldstein*, 115 R.I. 152, 154, 341 A.2d 51, 52, (1975); *King* v. *King*, 114 R.I. 329, 331, 333 A.2d 135, 137 (1975).

changed conditions affecting the child's welfare. *Commonwealth* v. *Daven*, 298 Pa. 416, 419, 148 A. 524, 526 (1930); *Friedman* v. *Friedman*, 224 Pa. Super. 530, 535, 307 A.2d 292, 295 (1973); *Commonwealth ex rel. O'Hey v. McCurdy*, 199 Pa. Super. 22, 24, 184 A.2d 290, 291 (1962); *Commonwealth* v. *Bishop*, 185 Pa. Super. 362, 367, 137 A.2d 822, 824 (1958).

We conclude, therefore, that the full faith and credit mandate did not inhibit the Family Court from making such orders and decrees concerning Scott's custody as his welfare required.

The father, however, relying on *Rogers* v. *Rogers*, 98 R.I. 263, 201 A.2d 140 (1964) and *State* v. *Zittel*, 94 R.I. 325, 180 A.2d 455 (1962), next argues that the Family Court is a statutory tribunal possessing only the jurisdiction conferred upon it by the Family Court Act; that nothing in that Act vests it with jurisdiction to condition its permission to a non-custodial parent to take a child beyond the limits of the state upon the posting of a bond for the child's return, and that its order to that effect was therefore erroneous.

In pressing this argument the father loses sight of G.L. 1956 (1969 Reenactment) §8-10-3, as amended by P.L. 1975, ch. 3, §1, which specifically confers upon the Family Court the power to provide for the support and custody of children; he also ignores other legislation authorizing the Family Court "to enter such decrees and orders as may be necessary or proper to carry into full effect all the powers and jurisdiction conferred upon it by law." *Goldstein* v. *Goldstein*, 109 R.I. 428, 430, 286 A.2d 589, 591 (1972).[3]

---

[3]General Laws (1969 Reenactment) §8-10-38 confers upon the Family Court the same powers that are conferred upon the Superior Court by §8-6-1, and the latter section provides in pertinent part:

> "The supreme and superior courts shall have power to enter such judgments, decrees and orders, and to frame and issue such citations, executions and other writs and processes, as may be necessary or proper to carry into full effect all the powers and jurisdiction which are or shall be conferred upon them respectively by the constitution or by law."

So, too, does the father fail to take into account that the practice has long prevailed in this state of requiring a bond in appropriate circumstances to ensure the return of a child whom a parent has been allowed to remove temporarily from the state; that the practice has been recognized or approved by this court, at least in dicta, in *In re Smith*, 100 R.I. 663, 667, 219 A.2d 126, 129 (1966), and in *Chatelain* v. *Chatelain*, 93 R.I. 136, 142, 172 A.2d 332, 335 (1961); and that courts elsewhere, almost without exception, have ruled that a bond may be required for that purpose. Annot., 154 A.L.R. 552, 562-64 (1945). *See, e.g., Wood* v. *Wood*, 76 Ariz. 412, 416-17, 265 P.2d 778, 781 (1954); *Durham* v. *Spence*, 228 Ga. 525, 531, 186 S.E.2d 723, 728 (1972); *Turney* v. *Nooney*, 9 N.J. Super. 333, 340, 74 A.2d 356, 359 (1950), and further proceedings, 21 N.J. Super. 522, 525, 91 A.2d 418, 419-20 (1952); *People ex rel. Halvey* v. *Halvey*, 185 Misc. 52, 55, 55 N.Y.S.2d 761, 764, *aff'd*, 269 App. Div. 1019, 59 N.Y.S.2d 396 (1945), *aff'd*, 295 N.Y. 836, 66 N.E.2d 851 (1946), *aff'd*. 330 U.S. 610, 67 S. Ct. 903, 91 L. Ed. 1133 (1947); *Kenworthy* v. *Kenworthy*, 197 Okla. 679, 681, 174 P.2d 587, 588 (1946); *Commonwealth ex rel. Balla* v. *Wreski*, 165 Pa. Super. 6, 11, 67 A.2d 595, 597 (1949); *Commonwealth ex rel. Warner* v. *Warner*, 156 Pa. Super. 465, 468, 40 A.2d 886, 887 (1945). *Contra, Jeans* v. *Jeans*, 348 S.W.2d 145, 158-59 (Mo. 1961). We can perceive no sound reason why at this time we should reject the practice.

Finally, the father contends that requiring him to post a cash bond was inappropriate. Some decisions apparently attach great weight to the potential risk in an out-of-state visitation that the noncustodial parent may attempt to relitigate the custody issue in another state, or even fail to return the child within the required time. Accordingly, those decisions almost routinely allow imposition of a bond as a requisite to permitting removal of the child from the state. Annot., 154 A.L.R. at 562-64. *See, e.g., Nelson* v. *Card*, 162 Colo. 274, 275, 425 P.2d 276, 277 (1967); *Kirby* v. *Kirby*, 126 Wash. 530, 533, 219 P. 27, 28 (1923).

Other courts do not exact a bond merely because of that potential risk. They hold that each case must stand on its own facts and that a bond should not be required absent a showing of need therefor. *Ellison* v. *Ellison*, 48 Ala. App. 80, 83, 261 So. 2d 911, 914 (1972); *Grimditch* v. *Grimditch*, 71 Ariz. 237, 238, 226 P.2d 142, 142 (1951)(per curiam); *Massey* v. *James*, 251 Ark. 217, 219, 471 S.W.2d 770, 771 (1971); *Lyritzis* v. *Lyritzis*, 55 App. Div. 2d 946, 391 N.Y.S.2d 133, 134 (1977)(mem.); *Parrish* v. *Parrish*, 116 Va. 476, 482-83, 82 S.E. 119, 121-22 (1914).

We adopt the latter approach. To implement that approach properly, a trial justice should specify in his decision the factors influencing him in deciding whether or not to require a bond.[4] Absent this requirement, meaningful review of whether that decision constitutes an abuse of discretion would be impossible in most, if not all, cases.

In this case, despite a careful reading of the trial justice's decision, we are unable to determine his rationale for ordering a bond. Some portions of his decision indicate that he may have ordered a bond because, after weighing the evidence, he shared the mother's fears that the father would abuse the limitations placed on the permitted out-of-state visitations. Other language in the decision suggests that he may have concluded that the mother's fears, though unreasonable or unsubstantiated, created conflicts between the parents which were detrimental to Scott, and that a bond, by assuaging the mother's fears and thus obviating those conflicts, would serve Scott's best interests — the ultimate focal point in this as in most child custody questions.[5]

---

[4] In this case the father did not challenge the amount of the bond. Nevertheless, we note that the amount should neither be so large that the noncustodial parent is unable to provide the bond, nor so small that it will not ensure compliance with its limitations. Moreover, the trial justice's decision should also indicate the factors upon which he relied in determining the amount of the bond.

[5] *Goldstein* v. *Goldstein*, 115 R.I. 152, 154, 341 A.2d 51, 52 (1975); *Chatelain* v. *Chatelain*, 93 R.I. 136, 139, 141-42, 172 A.2d 332, 332, 333-34 (1961).

Obviously, we cannot fault the trial justice for failing to articulate a factual basis for his conclusion with respect to the bond when, until today's decision, he was not obligated to do so. Nonetheless, fairness to all concerned demands that the new rule be followed in this case. Accordingly, we do what this court rarely does in cases following the course of equity — we remand the case to the Family Court with direction that the justice who presided at the trial (1) make findings based upon the evidence already heard that indicate why, in his judgment, a need exists for the father to post a bond to secure Scott's return to this state, and (2) enter a supplementary decree embodying those findings.[6] Jurisdiction is retained in this court to review that decree, and it may be invoked by either party within 30 days after entry.

The case is remanded to the Family Court for further proceedings in accordance with this opinion, the father's appeal is denied and dismissed in all other particulars, and the decree appealed from is affirmed.

*Haiganush R. Bedrosian,* for petitioner-appellee.

*James J. McGair,* for respondent-appellant.

---

[6]*South County Sand & Gravel Co.* v. *Bituminous Pavers Co.,* 108 R.I. 239, 246, 274 A.2d 427, 431 (1971); *Golden Gate Corp.* v. *Barrington College,* 98 R.I. 35, 45, 199 A.2d 586, 592 (1964). *Cf. S.M.S. Sales Co.* v. *New England Motor Freight, Inc.,* 112 R.I. 366, 368, 310 A.2d 141, 142 (1973)(action for damages).