The Press & Plate Co., Appellee, *v.* The Cincinnati Freie Presse Co., Appellee; The Craftsmen Finance Co., Appellant, et al.

(No. 6141—Decided January 25, 1943.)

*Mr. Francis A. Hoover* and *Mr. George E. Whitman,* for appellee, receivers of Cincinnati Freie Presse Company.

*Mr. Harry C. Burns* and *Mr. P. Jerome Pasch,* for appellant, The Craftsmen Finance Company.

Ross, J. This appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton

county presents the question whether that court may properly allow receivers' and attorneys' fees as costs to be paid from the proceeds of mortgaged property sold by the receivers.

In 104 A. L. R., 996, it is stated:

"Both federal and state courts have uniformly held that a mortgagee, or the mortgaged property, is not liable for expenses of carrying on or continuing the business of an insolvent private corporation or concern which has been placed in receivership at the suit of someone other than the mortgagee, in which proceeding the mortgagee has never acquiesced in any manner."

In the note following are cited many federal cases and cases from a number of states.

It will be noticed, however, that the rule applies only in those cases where the mortgagee has not acquiesced in the receivership proceedings in any manner.

An examination of the original papers and record presented shows the following:

On July 17, 1941, receivers for The Cincinnati Freie Presse Company, a corporation publishing a newspaper in the city of Cincinnati, were appointed.

On July 19, 1941, the receivers were instructed to continue the business.

On August 5, 1941, the receivers were again ordered to continue the business, but were directed by the court to advertise for sealed bids for the purchase of the assets of the corporation.

On August 15, 1941, the appellant, The Craftsmen Finance Company, was made a party defendant.

On August 15, 1941, the appellant was given leave to plead, and, on the same day, filed an answer and cross-petition in the receivership proceedings. From that time, it was on notice as to further proceedings.

In its cross-petition, the appellant set up its mortgage lien upon certain chattels in the possession of the receivers, alleged default in payment of the notes for which the mortgage had been given as security, and prayed for judgment for the amount of the notes and interest as well as for the sale of the assets, conditioned upon the failure of the receivers to operate at a profit. The prayer is as follows:

"Wherefore, this cross-petitioner prays for judgment against the defendant, The Cincinnati Freie Presse Company, in the sum of five thousand four hundred ninety seven dollars ($5497) with interest on two thousand one hundred dollars ($2100) at the rate of 6% per annum from April 21, 1941; that the liens on said mortgaged property be marshalled and their priorities determined; that a decree be entered finding that this defendant's chattel mortgages are the first and best liens on the chattels in said mortgages described, respectively; that said property be ordered sold forthwith by the receiver; that out of the proceeds of sale there be first paid to this cross-petitioner the amounts due to it as herein above set forth, without deduction for costs, fees or expenses, in connection with the current receivership of the defendant, The Cincinnati Freie Presse Company; that unless the present receivers are making a profit from the operation of the business of The Cincinnati Freie Presse Company that they be forthwith ordered to discontinue said operation and sell and dispose of all of the property of the said The Cincinnati Freie Presse Company at public sale or otherwise liquidate the affairs of said corporation; and for such other and further relief as may be just and equitable in the premises."

On September 20, 1941, the appellant filed its written consent permitting the receivers to sell the goodwill of the corporation for $510.

On October 18, 1941, the receivers were authorized by the court to employ a liquidation agent.

On February 26, 1942, the attorneys for appellant made an application for the service of an official stenographer ''to make a full report of the testimony and proceedings in the application for attorneys' and receivers' fees.'' On the same day a written ''motion for order fixing receivers' liability for rent and determining receivers' and attorneys' fees'' was filed by the attorneys for the receivers. The bill of exceptions applies only to this hearing.

The record shows that the appellant had been given notice of such application. The time was short owing to the fact, as the record shows, that the trial court was leaving the bench and desired the matter of receivers' and attorneys' compensation determined before he left.

On February 26, 1942, there was filed by the attorneys for appellant a stipulation. This stipulation recites:

''Come now the United States of America by Frederic W. Johnson, assistant United States attorney, and The Craftsmen Finance Company, an Ohio corporation, by its attorney, P. Jerome Pasch, both being parties in interest in the above captioned case and having respectively certain liens against the property of the defendant, as set forth in their respective cross-petition filed herein, and stipulate in respect of the priorities of their respective liens as follows:

''1. The receivers may first pay to the United States of America the sum of $2051.24.

''2. The receivers may next pay to The Craftsmen Finance Company the amount of the two certain mortgages held by the said The Craftsmen Finance Company in the aggregate principal sum of $5497, with interest as set forth in the answer and cross-petition of said The Craftsmen Finance Compay.

"3. The receivers may next pay to the United States of America the sum of $4217.41, together with interest as prayed for by intervening petition of the United States of America, less said sum of $2051.24, set forth in paragraph 1 above.

"The intention being hereby to settle the question and point of priority as between the two defendants herein, to wit, United States of America and The Craftsmen Finance Company, in respect of the tax lien claimed by United States of America and the mortgage liens claimed by The Craftsmen Finance Company."

On the same day, an entry fixing compensation of receivers and attorneys was made. And receivers were directed to pay such fees to themselves and attorneys.

On March 26, 1942, and March 27, 1942, reports of the receivers were filed, in which it appears fees were paid to receivers and attorneys as ordered.

On March 27, 1942, a motion was filed to charge all costs and expenses, losses of operation and all receivers' and attorneys' fees "to the excess if any of monies on hand after the payment in full of all valid liens, less such sum as in the court's discretion would be chargeable to lien holders in a foreclosure action," otherwise, that same be chargeable to the receivers personally.

Again, an application for an official stenographer was filed by attorneys for appellant, and the matter was heard and submitted the same day.

On March 31, 1942, the receivers were authorized by the court to sell accounts receivable.

On June 3, 1942, the motion of appellant as to costs was overruled, and incorporated in the entry is a finding as to the amounts due certain lien holders including appellant and the court ordered costs, receivers' and attorneys' fees paid from monies in posses-

sion of receivers, balance to be paid to lien holders.

From this order, appellant filed notice of appeal on June 23, 1942.

There can be no question from the foregoing but that appellant through its counsel acquiesced and participated fully and completely in the proceedings and had full opportunity to be heard upon the question of fees for receivers and attorneys, and did present in two hearings its claims concerning same, both as to facts and law. Such situation is entirely different from that stated in the rule hereinbefore noted.

There is no authority for excluding proceeds of mortgaged property from liability for fees and expenses under such circumstances. Only two other questions remain:

(1) Should such liability for costs be limited as appellant claims to what would be the normal costs of a foreclosure proceeding?

(2) Did the trial court grossly abuse its discretion in allowing the amounts of which complaint is made?

Three courses were open to the mortgagee when the receivers took over the assets of the corporation, including those upon which a mortgage existed. The mortgagee could have refused to participate in the proceedings resting upon its mortgage rights. The property, if sold, would have then been subject to the claim of the mortgagee. Second, it could have instituted a separate foreclosure proceeding under leave of court making the receivers parties. Third, it could, as it did, participate in the receivership proceedings using the machinery of that action to secure a sale of the mortgaged assets. Certainly, if the last recourse is adopted it cannot complain if reasonable costs and expenses of the receivership are charged against the proceeds of the sale of the mortgaged property, other assets not being sufficient to defray such costs and expenses. *Brown, Admr.*, v. *Winterbottom*, 98 Ohio

St., 127, 120 N. E., 292, 3 A. L. R., 1465, is not dispositive of the issues of law and fact here presented.

As to the second question, an examination of the record shows such services by the receivers and their attorneys as would justify the court in allowing some compensation. The record does not present a situation justifying this court in concluding that the amount. allowed constituted an abuse of discretion by the trial court. Ample opportunity was given appellant to present its contentions to the court. A written application was filed as required by the rules. Such informality as existed in the proceeding was due to the exigency imposed upon the court by reason of the impending absence of the judge from the bench. Complaint is made that reports were not filed periodically. The court stated that it was in continuous possession of information as to the progress of the receivership and knew of the character and amount of services performed. An examination of the docket and journal entries as well as the original papers and bill of exceptions shows that the receivers performed substantial and continuous services.

It should be noted in conclusion that the proceeds of sale of assets other than those mortgaged were in the hands of the receivers at the time of the order to pay receivers' and attorneys' fees so that these fees were not paid entirely from the proceeds of such mortgaged assets.

The order of the trial court will not be disturbed.

*Order affirmed.*

MATTHEWS, P. J., concurs.