274 A.2d 427.

SOUTH COUNTY SAND & GRAVEL CO. INC. *vs.* BITUMINOUS PAVERS CO.

MARCH 1, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In these receivership proceedings a Superior Court judgment authorizes payment of administration expenses out of funds collected on certain accounts receivable previously assigned by the defendant corporation to the Rhode Island Hospital Trust Company as security for loans and other indebtednesses. The trust company has appealed.

It appears that a creditor instituted receivership proceedings against the defendant corporation on October 3, 1967, on the ground of insolvency, that a temporary receiver was named the next day, and that two permanent co-receivers, both attorneys, were appointed on October 19, 1967. The decree appointing the receivers authorized them *inter alia* to collect all of the debts due the insolvent

corporation, to compromise any controversy or dispute concerning its property, and generally to do any other act which might have been done by the insolvent or which might be necessary for the administration of the receivership. No objection was interposed to the entry of that decree, nor was there any appeal taken from it.

The receivers took possession of a corporate shell. Its only assets were 21 accounts receivable ranging in amount from $26.47 to $22,127.54, and totaling approximately $60,000. Within the week following their appointment and before the receivers had realized anything on these accounts, the trust company intervened in the proceedings. It claimed that the insolvent had assigned the receivables to it as security for advances and other obligations, that the then due balance of more than $79,000 on those indebtednesses was in default, and that under its agreement with the insolvent it had acquired title to and the right to possession of the receivables.

We have only a partial transcript of the hearing on the trust company's petition for a turnover of the accounts. It discloses that the receivers challenged the validity of the trust company's security interest, and that they argued that the interests of all of the creditors would best be served if they, as receivers, were allowed to realize on the assigned collateral. Apparently recognizing the potential merit of the trust company's position, they suggested that whatever security interest it might ultimately be found to have on the accounts receivable could be imposed on any collections made by them "subject to the administration expenses." Although the transcript does not make clear whether either the trial justice or the trust company accepted their suggestion, it does reveal the following exchange between the court and one of the receivers:

> "The Court: This Court is willing to go along with
> the suggestion to the Court by the receivers on the

> condition that if the amount collected is not sufficient
> to meet the deficiency of the note, then the receivers
> would receive no payment for their services, and on
> the other hand, if there is a surplus, the receivers will
> receive payment, is that satisfactory?
> "Mr. Brill: Satisfactory to me.
> "The Court: And in the meantime, the Court will
> order the receivers to turn over a copy of the accounts
> receivable, now in their hands, to the Petitioner, and
> enter an order to that effect."

Despite what appears to be the court's direction, the substance of the foregoing exchange was not incorporated in any order or judgment and, indeed, the parties disagree on whether it should have been included. In addition, neither the papers in the case, nor any jacket entry, indicates what action was taken on the trust company's petition. Notwithstanding these deficiencies in the record, the parties agree that the court refused either to confirm the trust company's title to the receivables or to order a turnover.

In due course thereafter the trust company filed a proof of claim asserting status as a secured creditor. It was disallowed by the receivers, and after a hearing in the Superior Court the disallowance was affirmed. On appeal we reversed. *South County Sand & Gravel Co.* v. *Bituminous Pavers Co.*, 106 R. I. 178, 256 A.2d 514. Thereupon the trust company once again petitioned the Superior Court to direct the receivers to turn over the receivables as well as whatever monies they had collected on account thereof. That petition was followed by a request from the receivers for an allowance of fees for their services in preserving the receivership assets.

At the hearing which followed it was conceded at the outset that this court's opinion, 106 R. I. 178, 256 A.2d 514, gave the trust company an immediate right to possession of the accounts receivable. Consequently, the pro-

ceeding was devoted principally to a consideration of the nature and extent of the services rendered by the receivers. On that subject it appeared that they had realized $14,923.01 by way of compromise on three receivables having a face value of approximately $16,750, and that no collections had been made on the other 18 accounts all of which were in dispute. There was also testimony, none of it very specific, concerning their other activities in the administration of the estate, most of which related to the dispute as to whether or not the trust company had a valid security interest in the receivables. Based upon that presentation the receivers were ordered to transfer to the trust company the uncollected accounts receivable and to pay it the funds collected less the following sums which they were authorized to retain; $85 as reimbursement for their expenses in connection with the receivership proceedings; $2,250 as their compensation for collecting the three accounts receivable; and $1,500 as their fee for services in connection with the trust company's appeal to this court. The trust company has appealed, and it argues, in substance, that the receivership costs and expenses should not be permitted to be charged against secured assets when to do so would result in a dilution of collateral which was already insufficient to satisfy the indebtednesses it secured.

If this were the usual type of receivership case, our discussion would be limited. The receivers would be entitled to be reimbursed for their just expenses and reasonably compensated for their services out of funds in the receivership estate, *Onorato* v. *Mancini*, 66 R. I. 119, 17 A.2d 867; little heed would be given to the trust company's complaint that the receivers should be penalized for failing to file reports as required under Super. R. Civ. P., for we would assume that the trial justice took those omissions into consideration when he made the awards, *Woodward*

v. *Providence Teaming Co.,* 71 R. I. 291, 295-96, 44 A.2d 550, 552; and the only questions would be whether the trial justice in fixing the fees had abused his discretion, *Barba* v. *Cassano,* (R. I.) 163 A. 880, or had committed error in determining what were proper administration expenses.

But this is not the usual type of receivership case. What makes it unusual is that the receivership estate has no unencumbered assets, and the receivers, if they are to be reimbursed for their expenses and compensated for their services out of that estate, must resort to the receivables which were validly assigned to the trust company and which, even if fully collected, will not satisfy its claim against the insolvent.

Inevitably in situations of this kind, just as in those where the free assets are not sufficient to meet the receivership expenses, a conflict develops between the receiver and the secured creditor. The receiver naturally looks in whole or in part to the encumbered property for his fees and expenses, and the secured creditor just as naturally insists that his security interest should not be diminished by receivers' charges at least until what is due and owing has been fully paid.

Without attempting to differentiate between the varying types of expenses or allowances which may be involved or the kinds of encumbrances sought to be charged, a judicial rule has evolved which permits receivership expenses to be taxed against encumbered property when the secured creditor or his property has been benefited or otherwise advantaged by the receivership proceedings and then only in proportion to the extent of the benefit or advantage conferred. In addition, and in appropriate circumstances, the encumbered property may similarly be entrenched upon if the secured creditor has expressly or impliedly either acquiesced in or consented to the receivership pro-

ceedings or adopted them as a means of collecting his debts, or if he has failed to act with reasonable promptness or due diligence to pursue his remedy of foreclosure or otherwise. *Seaboard National Bank* v. *Rogers Milk Products Co.,* 21 F.2d 414 (2d Cir. 1927); *Frick* v. *Fritz,* 124 Iowa 529, 100 N.W. 513; *Press & Plate Co.* v. *Cincinnati Freie Presse Co.,* 72 Ohio App. 35, 48 N.E.2d 870; *Marsh* v. *Arthur C. Marsh Co.,* 153 Ore. 134, 55 P.2d 1111; *National Surety Corp.* v. *Sharpe,* 236 N.C. 35, 72 S.E.2d 109; *State* v. *Iman Mining Co.,* 144 W.Va. 46, 106 S.E.2d 97; 2 Clark, *Law of Receivers* (3d ed.) §§639 and 641; Annot., 104 A.L.R. 990. A similar rule prevails in the bankruptcy forum. *Textile Banking Co.* v. *Widener,* 265 F.2d 446 (4th Cir. 1959); *In re Prindible,* 115 F.2d 21 (3d Cir. 1940); 4A Collier, *Bankruptcy* (14th ed.) ¶70.99 at 1239-1243.

It appears, therefore, that in resolving the rivalry between secured creditors and receivers the courts have struck a balance, and have adopted a rule which is fair and just to both parties. While protecting the interests of the secured creditor who has always been a favorite of the law, it safeguards as well the interests of the receiver who takes office with at least the implied understanding that the court which appointed him and whose officer he is will protect his right to be paid for his services and to be reimbursed for his proper costs and expenses.

Application of the rule provides no justification whatsoever for allowing the receivers a $1,500 fee for contesting the validity of the security interest in the accounts. The trust company did not seek their appointment, and they were not appointed to look after its interests. It already had the protection of an assignment of the insolvent's accounts receivable and it promptly intervened in the proceedings in an attempt to exercise its rights under the security agreement. Because of the receivers' hostility, it was forced to litigation both in the Superior Court

and in this court and the resulting delay will quite possibly be detrimental to its salvage operations. Certainly under no conceivable theory was its secured position in any way benefited or advantaged by the receivers' antagonism, and it would be a harsh and manifestly unjust rule which in such circumstances would require the trust company to pay reparations to the receivers for their unsuccessful attempt to cut down its contractual rights.

The allowances to the receivers of $2,250 as the fee for the monies they collected and of $85 as reimbursement for the administration expenses they incurred stand on a different footing, and we have no doubt that there may be circumstances which would entitle those allowances to priority over the trust company's security interest. That the receivers failed to proffer and the trial justice to insist upon evidence of such circumstances is undoubtedly attributable to their unawareness of the applicability in this state of the guidelines not announced until today. To prevent what might otherwise be an injustice, it is only proper that the receivers, who throughout these proceedings have acted as the court's officers and whose good faith is unchallenged, should be given an opportunity to fill the evidentiary gap.

In these unusual circumstances we do what this court rarely does in cases following the course of equity. We remand to the Superior Court for a further hearing and for completion of the record. *Golden Gate Corp.* v. *Barrington College*, 98 R. I. 35, 45, 199 A.2d 586, 592; *Rhode Island Hospital Trust Co.* v. *Gilleney*, 61 R. I. 23, 27, 199 A. 691, 693. At that hearing the parties should be afforded an opportunity to present relevant evidence, consistent with the guidelines announced herein, as to whether the encumbered property or the trust company may be charged with the costs of administering the receivership estate and with the payment of compensation to the receivers for col-

lecting the accounts receivable. If at all possible the additional evidence should be submitted to the trial justice before whom the case has already been heard, and any new decree or order entered on the question of the receivers' entitlement may, consistent with this opinion, be based upon the evidence previously heard as well as on such additional evidence as may be offered by the parties in order to complete the record.

The trust company's appeal is sustained in part, the decree appealed from is reversed, and the cause is remanded to the Superior Court for further hearing and other proceedings consistent with this opinion.

*Samuel A. Olevson,* for Rhode Island Hospital Trust Company—Appellant.

*Marvin A. Brill, John D. Lynch,* Receivers of Bituminous Pavers Co.—Appellee.