Darrell K. **BAHNDORF** and Terrie L. Bahndorf, Appellees,

v.

Lynn R. **LEMMONS** and Janet E. Lemmons, Appellants.

Lynn R. **LEMMONS** and Janet E. Lemmons, Appellants,

v.

Pravin **PATEL** and Naresh Patel, Third–Party Defendants,

State of Iowa, Appellee.

No. 93–1048.

Supreme Court of Iowa.

Dec. 21, 1994.

J. Richard Johnson and Ann M. Cisco of White & Johnson, P.C., Cedar Rapids, for appellants.

Mark H. Rettig of Hines, Pence, Day & Powers, P.C., Cedar Rapids, for appellees Darrell K. and Terrie L. Bahndorf.

Bonnie J. Campbell, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee State of Iowa.

Ronald W. Wendt of Nazette, Marner, Good, Wendt & Knoll, Cedar Rapids, for receiver Gordon R. Epping.

LARSON, Justice.

The parties in this receivership action have separately appealed from the district court's order approving the receiver's final report and discharge. We affirm.

In March 1991, Darrell and Terrie Bahndorf formed a partnership with Lynn and Janet Lemmons to operate a Budget Inn Motel in Cedar Rapids. The motel was owned by Pravin Patel. It soon became apparent that the partners were totally incompatible. In January 1992, the Bahndorfs filed a petition for appointment of a receiver and requested that the district court supervise the dissolution of the partnership. The court appointed a nephew of the owner as receiver, but the Lemmons soon sought the nephew's removal. The court removed the nephew on February 27, 1992, and appointed Janet Lemmons and Darrell Bahndorf as receivers.

Pursuant to a court order, the partnership hired Gordon R. Epping as its bookkeeper. The Bahndorfs petitioned to remove Lemmons as one of the receivers. The court concluded that Bahndorf and Lemmons could no longer cooperate and would be incapable of winding down the business of the partnership. The court appointed Epping as receiver on November 5, 1992.

When the partners interfered with the operation of the motel and began to harass Epping, Epping requested that the court allow him to hire an attorney at the expense of the partnership. The court granted this request.

The Lemmons filed a motion to remove Epping as receiver on January 8, 1993, three days after the partnership failed to make its monthly payment to the owner. The Lemmons complain that this default was the result of Epping's mismanagement of the motel. Epping counters that the partnership

was insolvent when he took it over. This was the result, he maintains, of the partners' poor management and excessive draws. He also contends that the partners' refusal to put any of their own funds into the partnership speeded up its ultimate collapse.

On January 20, 1993, the district court declared the partnership in default on its agreement with the owner. It ordered Epping to surrender possession of the motel, "as well as all records, revenues, accounts receivable, [and] bills." He filed his final report as receiver on January 26, 1993.

In the meantime, the motel tax collected during the fourth quarter of 1992 and the sales tax collected during the first twenty days of January 1993 were accruing. They were not due, however, until January 31, 1993, which was after the date that Epping relinquished his receivership duties and the partnership assets.

On June 21, 1993, the district court approved Epping's final report and discharged him, finding no wrongdoing in his management of the motel. The court, at Epping's request, also found that Epping had no equitable or legal interest in the motel. *See* Iowa Code § 421.26 (1991) (liability for unpaid taxes imposed on party with "substantial legal or equitable interest in the ownership of the corporation or partnership"). The court also approved Epping's payment from receivership assets of both his legal expenses and his own fees (to which the partners had previously agreed). The court ordered that any money remaining in the receivership be paid to the Department of Revenue.

The Lemmons, the Bahndorfs, and the Department of Revenue all appealed. The Lemmons and Bahndorfs appealed from the court's approval of the receiver's final report. They challenge the district court's finding that Epping had no exposure to tax liability (because he was not a legal or equitable owner) and objected to the award of receiver's fees.

The Department also challenges the court's approval of Epping's final report and contends that the court did not have subject matter jurisdiction to find that he had no ownership in the business. The Department contends further that Epping improperly paid other expenses out of the tax money.

### I. *The Receiver's Management of the Motel.*

The partners contend that Epping mismanaged the motel by paying "deferrable" expenses in preference to more critical payments, including the monthly payment to the owner and remittance to the Department of Revenue. They claim he was negligent in his day-to-day operation of the motel and improperly paid his own fees without prior authority.

Insufficient operating capital hampered Epping's management of the motel from the beginning. The partnership was insolvent when Epping took over, remained insolvent throughout his three-month tenure, and was still insolvent when he relinquished control of the motel in January 1993.

When Epping took over, maintenance had been seriously neglected. Water covered the boiler room floor, the garage was run-down, and the sauna needed repairs. Pursuant to a court order, he requested and received from the owner a list of required repairs to be made. State law required Epping to install a surveillance system and to put nonslip matting in the motel bathrooms. He complied with these requirements and paid for them, as well as the repairs, from partnership funds.

Epping also paid overdue fees to the owner's attorney for work done prior to the beginning of Epping's receivership. He paid past due accounting fees that were the subject of a threatened collection action.

The partners now claim that these repairs and fees should have been deferred in favor of making the monthly payment to the owner. As to payment of the repairs, failure to comply with the contract's requirement to make repairs could have been grounds for a default, and Epping was seeking to avoid a default. While Epping did pay his own fees without prior court approval, the fees had been approved by the partners at the beginning of his receivership, and the court ultimately approved them in approving Epping's final report.

■ The problem was simply that, regardless of what priority Epping chose for payment of expenses, fees, and taxes, he could not prevent a default without a contribution by the partners or infusion of loan capital.

When Epping attempted to get court approval to borrow money to prevent a default, the court denied the request. The court suggested instead that Epping request a cash infusion from the partners and that he ask the owner to accept a late payment. These efforts were unsuccessful. The owner's attorneys advised Epping that no extension of time would be granted. Epping sent a letter to the partners and their attorneys by certified mail, advising them that he had insufficient funds to make the January payment to the owner and requesting a cash infusion from the partners. They refused.

When a default appeared to be imminent, Epping approached the bank where the partnership maintained its account and requested that the bank temporarily honor overdraft checks to make the January payment. The bank officers agreed, and the attorneys for the partners had no objections. However, when Epping delivered the payment checks to the owner and explained the arrangement, the owner went to the bank and demanded cash for the checks. The bank refused to honor them for cash, and the owner declared a default.

The district court, in approving Epping's final report, aptly observed:

> In this case the handwriting was on the wall from the very beginning. This business was in substantial trouble. The partners had become so at odds that they could not communicate, let alone work with each other. In addition to which, because of the difficulties that had developed between the partners, the owner was fed up with the whole deal and was determined to default. If his monies under the agreement were not paid, he would default; if there were no repairs, he would default. A number of efforts were made to save the business. The last-ditch effort was the partners agreeing to Mr. Epping as a receiver. Because [the owner] would not deposit the check and [instead] demanded cash, there

was no way to save the business and it was originally returned to [the owner].

> . . . .

> The partners now in hindsight want to second-guess the receiver and make him out to be the bad guy when all he did was take over an insolvent business which had been declared in default before and which was behind on taxes. All of the partners agreed to the receiver and to the fees. Despite their saying he lost the business, it essentially had been lost long before he arrived on the scene. The receiver is only the business manager for the partnership. The partners are the ultimate responsible parties . . . .

> In any case, this court finds no wrongdoing on the part of the receiver and finds that he did all he could to try to save this business; that the partners agreed to his appointment, they agreed to his fees and they are responsible therefor. In addition to which, the court finds that it was the partners' activities and disputes that caused Mr. Epping to have to retain his own counsel and therefore the partnership should be responsible [for those attorney fees].

We agree that Epping was not guilty of any mismanagement and that his final report should be approved.

II. *The Tax Issues.*

Everybody has a theory about the taxes. The Lemmons argue that Epping should have treated the payment of the collected motel and sales taxes as a priority claim, citing this general rule:

> In so far as taxes apply to or accrue against property in receivership, the general rule is that, whether or not such taxes are a lien or a debt by the laws of the government within whose jurisdiction the property is situated, they are and should be regarded by the courts as a preferred and paramount claim over all other claims, except judicial costs. Such preference of taxes over other claims is frequently predicated on their character as operating expenses of the receivership.

66 Am.Jur.2d *Receivers* § 428, at 233 (1973) (footnotes omitted).

The Bahndorfs also contend that Epping should have paid the taxes before he paid other partnership bills. They present two interesting arguments: First, Epping should have placed the tax receipts in a segregated account, even though Bahndorfs themselves maintained no such account when they were in charge. Second, because Epping paid other expenses instead of the taxes, the partners should be excused from paying the taxes, even though they were originally liable for them. The aim of these arguments, apparently, is to establish grounds to deny Epping's fee.

The Department joins in the argument that Epping should have paid the taxes in preference to other partnership expenses. It refers to collected taxes as "trust fund" taxes and criticizes Epping for "commingling" them with other partnership funds. However, the Department does not contend that Epping was required to maintain a separate account. In fact, prior to Epping's involvement in the business, the partnership had never maintained any such account. The Department, moreover, does not point to any statute or rule that requires segregated accounts.

As to the argument that the court should consider the accrued taxes as expenses of the receivership and therefore obtain priority under the general rule, the fact is that the receiver asked the court for direction as to which payments to make. The court's order advised the receiver to do whatever was necessary to prevent a default on the management agreement. This required Epping to pay past due expenses and repairs because failure to do so would also be grounds for default.

■ It is true, as the partners argue, that taxes are entitled to priority in a receivership. But that principle does not help them here. Expenses of a receivership (which, of course, would include receiver's fees) are to be paid first. Iowa Code section 680.7 (1991) provides:

> When the property of any person, partnership, company, or corporation has been placed in the hands of a receiver for distribution, *after the payment of all costs* the

following claims shall be entitled to priority of payment in the order named:

> . . . .
>
> 2. Debts due or taxes assessed and levied for the benefit of the state, county, or other municipal corporation in this state.

(Emphasis added.)

■ The receiver at all times acted under the court's direction, and the court did not require payment of the taxes.

Moreover, the short answer to the complaints about preferential payment of nontax expenses is simple: The sales tax and motel tax were not due until January 31, 1993, and at that time, Epping was no longer acting as receiver. After the court discharged him, he lacked access to partnership funds with which to pay *any* expenses.

If the effect of Epping's preferential payment places the responsibility for payment of the taxes on the partners, they cannot complain. Taxes and all other expenses are their responsibility, not the responsibility of the court-appointed receiver who owned no part of the business.

This brings us to the Department's second argument: that the court erred in finding that Epping had no legal or equitable interest in the business. The Department contends that this had the effect of excusing Epping's personal liability for payment of the taxes under Iowa Code section 421.26, which extends personal liability only to owners of an interest in the business.

The Department further contends that the district court had no subject matter jurisdiction to enter an order that effectively deprived the Department of a claim against Epping by finding that he lacked any ownership interest in the business. The Department contends that any determination of tax liability is necessarily vested in the Department through administrative proceedings.

■ We conclude that, while a finding that Epping had no legal or equitable interest in the motel might have the collateral effect of finding no liability under section 421.26, it was within the subject matter jurisdiction of the district court to make a determination of who owned the business. The court did not

attempt to fix ultimate liability for the taxes, nor do we. That matter is now in administrative proceedings.

We have considered all the arguments raised by the appeals, including those not specifically discussed, and find no merit in any of them.

**AFFIRMED ON ALL APPEALS.**

All justices concur except CARTER, J., who takes no part.