# IN THE SUPREME COURT OF IOWA

No. 14–1522

Filed April 10, 2015

Amended June 15, 2015

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Plaintiff-Appellee,

vs.

COMMUNITY CARE, INC.,

Defendant,

and

**DEWITT BANK & TRUST COMPANY,**

Intervenor-Appellant,

**DAC, INC.** and **JACKIE SCOTT,**

Intervenors-Appellees,

**MORRISANDERSON & ASSOCIATES, LTD.,**

Receiver-Appellee,

BANK IOWA,

Intervenor.

---

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

A bank appeals a district court decision permitting the payment of receivership expenses out of property in which it had a prior perfected security interest. **REVERSED AND REMANDED WITH DIRECTIONS.**

Linda M. Kirsch and Kerry A. Finley of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Amy C. Licht, Assistant Attorney General, for appellee Iowa Department of Human Services.

Heather L. Campbell and David W. Nelmark of Belin McCormick, Des Moines, for appellee DAC, Inc.

Chet A. Mellema and Donald F. Neiman of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee MorrisAnderson & Associates, Ltd.

Matthew J. Reilly of Eells & Tronvold, P.L.C., Cedar Rapids, for appellee Jackie Scott.

Robert L. Hartwig, Johnston, for amicus curiae Iowa Bankers Association.

**MANSFIELD, Justice.**

This case presents the question whether Iowa Code sections 249A.44(3) and 680.7 authorize the payment of a receiver's expenses out of property in which a secured creditor had a prior perfected security interest. Guided in part by the principle that we avoid interpreting ambiguous statutes in a manner that leads to constitutional difficulties, we hold these sections do not authorize a receiver to be paid out of assets that are subject to a prior perfected lien. Rather, we conclude Iowa follows the common law rule that receivership expenses may be charged to secured property only to the extent the secured creditor has received a benefit from the receivership or the secured creditor has consented to the receivership.

## I. Background Facts and Proceedings.

For many years, Community Care, Inc. (CCI), based in DeWitt, operated residential facilities and provided health care services for persons with developmental and intellectual disabilities in eastern Iowa. Payment for CCI's services came in large part from the Medicaid program. DeWitt Bank & Trust Company (the Bank) was CCI's primary lender and held perfected security interests on much of CCI's real and personal property.

In the fall of 2013, following the filing of a qui tam action by a former CCI employee, the Iowa Department of Human Services (DHS) determined there was a credible allegation CCI had committed Medicaid fraud. DHS suspended part of its Medicaid payments to CCI. In return, CCI agreed to appoint a third-party manager for its operations. Eventually the manager resigned.

On March 31, 2014, DHS filed an application in the Polk County District Court for injunctive relief under Iowa Code section 249A.44,

which the general assembly had enacted the previous year. *See* 2013 Iowa Acts ch. 24, § 8 (codified at Iowa Code § 249A.44 (2015)).[1] This provision is entitled "Overpayment — emergency relief" and, among other things, authorizes DHS to obtain

> a temporary restraining order or injunctive relief to prevent a provider or other person from whom recovery may be sought, from transferring property or otherwise taking action to protect the provider's or other person's business inconsistent with the recovery sought.

Iowa Code § 249A.44(1). CCI did not oppose DHS's request for an injunction. On April 3, the district court granted DHS's request and enjoined CCI from "transferring property or otherwise taking any action inconsistent with [DHS's] right to recover overpayments of medical assistance from CCI," subject to CCI's right to pay expenses or convey assets in the ordinary course of business.

Subsequently, CCI ceased operations. On May 8, CCI leased much of its real and personal property to DAC, Inc. (DAC). DAC began serving the former clients of CCI.

On May 15, DHS and CCI filed a joint motion for appointment of a receiver for CCI. DAC intervened and joined in DHS and CCI's motion. The motion was based on another subsection of Iowa Code section 249A.44, which provides:

> If an injunction is granted, the court may appoint a receiver to protect the property and business of the provider or other person from whom recovery may be sought. The court shall assess the costs of the receiver to the provider or other person.

Iowa Code § 249A.44(3).

---

[1]All subsequent Iowa Code references are to the 2015 Code, unless otherwise indicated.

Another financial institution, which was familiar with DHS's position that receiver fees and expenses could be paid out of property despite the existence of prior liens, but which had a smaller security interest at stake,[2] moved to intervene in the action. A hearing was held on July 9. The court noted the other institution's claimed security interest was limited to property with an estimated value of $229,528.81, and CCI's total assets were estimated to be $7,636,033.23. It appointed the requested receiver, expressly giving the receiver "super-priority status on the vast majority of the assets." The court also approved compensation for the receiver at the rate of $325 to $400 per hour, plus six percent of the value received or debt assumed in any transaction and travel reimbursements at the rate of $170 per diem and $.56 per mile.

Although the Bank was mailed copies of the motion for appointment of a receiver and the order setting the motion for hearing, the Bank was not a party to the litigation at that point and did not participate in the July 9 hearing. Yet, the court's order following the hearing seemingly provided that the receiver's compensation could be paid out of CCI assets in which the Bank had a prior perfected security interest. On July 15, the Bank filed a motion to intervene and for clarification. In the motion, the Bank explained that it had a number of perfected liens, including five mortgages, securing a total debt of approximately $2,965,000. The Bank did not object to the receiver's appointment, but sought clarification that the receiver's fees and expenses would not be paid out of property in which it had prior lien interests. Meanwhile, concerns were developing that CCI's earlier

---

[2]The other bank held a mortgage on one of CCI's buildings located in Chickasaw County.

valuations had been overstated and there would be insufficient assets to cover receivership expenses unless the Bank's security interests could be overcome.

On August 22, 2014, the district court granted the Bank's motion to intervene but denied the substantive relief it had sought. It held that Iowa law required "the expenses of the receiver to be paid before the creditors, including secured creditors." The Bank applied to this court for interlocutory review. We granted the application and expedited the appeal.

## II. Standard of Review.

Receivership proceedings are equitable, and we therefore review them de novo. *See Fed. Land Bank of Omaha v. Heeren*, 398 N.W.2d 839, 841 (Iowa 1987); *see also* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). We review questions of statutory interpretation for correction of errors at law. *State v. Olsen*, 848 N.W.2d 363, 366 (Iowa 2014).

## III. Analysis.

During the 2013 legislative session, the general assembly enacted and the governor approved a new law "relating to Medicaid program integrity." *See* 2013 Iowa Acts ch. 24, preamble. The legislation contained several provisions relating to recovery of Medicaid overpayments made to health care providers. *See id.* §§ 2–7 (codified at Iowa Code §§ 249A.2(11), .39–.43). The legislation further provided:

**Overpayment — emergency relief.**

1. Concurrently with a withholding of payment, the imposition of a sanction, or the institution of a criminal, civil, or administrative proceeding against a provider or other person for overpayment, the director or the attorney general may bring an action for a temporary restraining order or injunctive relief to prevent a provider or other person from

whom recovery may be sought, from transferring property or otherwise taking action to protect the provider's or other person's business inconsistent with the recovery sought.

2. To obtain such relief, the director or the attorney general shall demonstrate all necessary requirements for the relief to be granted.

3. If an injunction is granted, the court may appoint a receiver to protect the property and business of the provider or other person from whom recovery may be sought. The court shall assess the costs of the receiver to the provider or other person.

*Id.* § 8 (codified at Iowa Code § 249A.44(1)–(3)).

Iowa also has a longstanding general statute regarding receivers, which provides in part:

**680.7. Claims entitled to priority.**

When the property of any person, partnership, company, or corporation has been placed in the hands of a receiver for distribution, after the payment of all costs the following claims shall be entitled to priority of payment in the order named:

1. Taxes or other debts entitled to preference under the laws of the United States.

2. Debts due or taxes assessed and levied for the benefit of the state, county, or other municipal corporation in this state.

3. Debts owing to employees for labor or work performed or services rendered as provided in section 626.69.

Iowa Code § 680.7. In *Bahndorf v. Lemmons*, we interpreted section 680.7 to mean that expenses of the receiver would be paid ahead of the three categories of listed debts. 525 N.W.2d 404, 408 (Iowa 1994).

The Bank argues that nothing in section 249A.44 or section 680.7 authorizes expenses of a receiver to be paid out of property subject to prior perfected liens. In its view, section 249A.44(3) simply provides that the receivership costs are "assess[ed]" to CCI. *See* Iowa Code

§ 249A.44(3). It does not enable CCI to avoid third-party liens in order to pay the receiver ahead of the lienholder. And section 680.7, according to the Bank, simply addresses priority among *unsecured* claims. *See id.* § 680.7. The Bank further argues that its liens are property interests and that it would be deprived of property without due process of law if those liens could be avoided by a later unsecured claim.

DHS responds that Iowa Code section 249A.44(3) allows the receiver's expenses to be recovered from any property to which the health care provider (CCI) holds legal title, even if such property is subject to a prior lien. DHS further maintains that Iowa Code section 680.7 gives the receiver's expenses priority over all claims, both secured and unsecured. Lastly, DHS argues that Medicaid recovery statutes should be broadly construed. *See In re Estate of Melby*, 841 N.W.2d 867, 876 (Iowa 2014). According to DHS, if we adopt the Bank's legal interpretation, persons will be unwilling to become receivers of health care providers that are highly leveraged with secured debt for fear of not having their expenses paid.

Upon our review, we think the Bank has the better argument. To begin with, we do not believe the express language of either section 249A.44(3) or section 680.7 provides the answer here. Section 249A.44(3) states, "The court shall assess the costs of the receiver to the provider or other person [from whom recovery will be sought]."[3] Iowa Code § 249A.44(3). To "assess" in this context means "to subject to a tax

---

[3]The "other person" language has no applicability here. *See* Iowa Code § 249A.44(3). DHS does not maintain that it has the ability to pursue the Bank for repayments it claims CCI owes. *See id.* § 249A.46(1) (providing, in section entitled "[l]iability of other persons — repayment of claims," that DHS "may require repayment of medical assistance paid from the person submitting an incorrect or improper claim, the person causing the claim to be submitted, or the person receiving payment for the claim").

[or] charge," or "to impose (as a tax [or charge]) according to an established rate." *See Merriam-Webster's Collegiate Dictionary* 74 (11th ed. 2003). However, the mere fact that CCI will be *charged* with the costs of the receiver does not tell us where those charges *are prioritized* in relation to other debts. The district court rightly found that section 249A.44(3) is not determinative here.

The district court found, however, that section 680.7, part of the general law relating to receiverships, governs here. It provides that when property has been put into the hands of a receiver, certain claims "after the payment of all costs" are entitled to payment priority—specifically, taxes and debts owed the United States, taxes and debts owed state and local government, and wage claims. *See* Iowa Code § 680.7. But that provision is silent on the subject of *secured* claims; a logical inference is that it does not address their priority. If DHS were correct that such claims are actually covered by the statute, then not only receivership expenses (assuming "all costs" in Iowa Code section 680.7 refers to costs of the receivership) but all Medicaid-related claims and even unsecured claims of former CCI employees would have to be paid out of the Bank's security before the Bank could access it. *See* Iowa Code § 249A.53(1) (classifying Medicaid claims as having tax status); *id.* § 680.7(2) (providing for priority of state taxes for property held by a receiver); *id.* § 680.7(3) (providing for recovery of employee claims after payment of taxes for property held by a receiver).[4] This interpretation seems to us clearly wrong.

---

[4]For example, we have previously stated, "The general policy of this state . . . in receivership matters is to prefer taxes over other claims." *State ex rel. Mitchell v. Nat'l Life Ins. Co.*, 223 Iowa 1301, 1314, 275 N.W. 26, 33 (1937). Under DHS's interpretation, its Medicaid claims, treated like taxes, would receive priority to be paid in full before the Bank's prior security interest could even be considered.

DHS invokes language from our decision in *Bahndorf* interpreting section 680.7, *Bahndorf*, 525 N.W.2d at 408, yet we do not believe that case addresses the relative priority of secured claims and receivership expense claims either. *Bahndorf* involved a dispute over whether certain taxes should have been paid ahead of receiver expenses. *Id.* There were no security interests at issue in *Bahndorf*. *See id.* There we said,

> It is true, as the partners argue, that taxes are entitled to priority in a receivership. But that principle does not help them here. Expenses of a receivership (which, of course, would include receiver's fees) are to be paid first.

*Id.* We then proceeded to quote Iowa Code section 680.7. *Id.* In context, we were only indicating in *Bahndorf* that receivership costs are to be paid ahead of taxes—i.e., as between taxes and receivership costs, the latter get paid first. *See id.* We were not saying that receiver costs can be paid by invading a secured creditor's previously perfected security interest.

We agree with the Bank that Iowa Code section 680.5 rather than section 680.7 governs priority of secured claims. It states, "Persons having liens upon the property placed in the hands of a receiver shall, if there is a contest as to their priority, submit them to the court for determination." Iowa Code § 680.5. This provision dates back to 1897. *See* Iowa Code § 3825 (1897) (now codified at Iowa Code § 680.5). In an early case, we cited it for the proposition that "[t]he receiver takes the debtor's property subject to the payment of all valid prior liens." *Smith v. Sioux City Nursery & Seed Co.*, 109 Iowa 51, 55, 79 N.W. 457, 458 (1899).[5]

---

[5]Another of our other early cases supports the idea that prior liens take priority over receiver costs. *See Andrew v. Union Sav. Bank & Trust Co. of Davenport*, 225 Iowa 929, 938, 282 N.W. 299, 303 (Iowa 1938) ("A receiver takes the property subject to existing liens and equities and his exclusive possession thereof does not interfere with, or disturb, any pre-existing liens, preferences, or priorities . . . ." (Internal quotation

In 1906, the general assembly added what is now Iowa Code section 680.7. *See* 1906 Iowa Acts ch. 156, § 1 (codified at Iowa Code § 3825-a (Supp. 1907)). Still, the legislature left the existing counterpart to section 680.5 in place. *See* Iowa Code § 3825 (Supp. 1907). This supports the inference that section 680.7 was not intended to disturb the existing law regarding the relative priority of secured and unsecured claims. Rather, it was designed to address the separate subject of priority among unsecured claims.

Notably, the priority provision in the Federal Bankruptcy Code takes an approach analogous to section 680.7 and gives a first priority to "administrative expenses" without mentioning secured claims. *Compare* 11 U.S.C. § 507(a)(1)(C) (2012), *with* Iowa Code § 680.7. Yet, it is clearly understood as a matter of bankruptcy law that secured claims come ahead of administrative expenses with respect to assets covered by the security interest. *See* 11 U.S.C. § 506(d)(2) (providing that a secured claim retains secured status even if the secured creditor does not file a proof of claim); H.R. Rep. No. 95-595, at 357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313 ("Subsection (d) [of 11 U.S.C. § 506] permits liens to pass through the bankruptcy case unaffected."). Perhaps even more noteworthy is the fact that the priority provision in the 1898 Federal Bankruptcy Act was silent on the subject of secured claims as well. *See* Bankruptcy Act of 1898, ch. 541, § 64, 30 Stat. 544, 563 (repealed 1978). Nonetheless, at the time, secured claims generally took priority over administrative expenses. *See Mills v. Va.-Carolina Lumber Co.*, 164 F. 168, 171 (4th Cir. 1908) (holding that a secured creditor

---

marks omitted.)); *see also Citizens Banking Co. v. Monticello State Bank*, 143 F.2d 261, 265 (8th Cir. 1944) (applying Iowa law and stating that "a receiver takes the property subject to all liens and incumbrances").

should not "be required to pay any part of the costs of administration of [a] bankrupt's estate" but rather, should be paid in full first). Additionally, the 1898 Act was adopted around the same time as Iowa Code section 680.7's predecessor. *Compare* Bankruptcy Act of 1898, ch. 541, § 64, 30 Stat. 544, 563, *with* 1906 Iowa Acts ch. 156, § 1.

Furthermore, adopting DHS's position that it can charge the costs of a receivership against a secured creditor's collateral without any showing of benefit to the secured creditor (and without even *notifying* the secured creditor) would raise serious constitutional concerns. A security interest is a form of property protected by the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 18 of the Iowa Constitution. *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 76, 103 S. Ct. 407, 411, 74 L. Ed. 2d 235, 241 (1982) (stating that despite the government's contention to the contrary, the interest of a secured party is an interest in property); *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007) (holding that "a security interest is indisputably a property interest protected by the Fourteenth Amendment" and that it is "the *property* right to the collateral that secures the debt in the event of non-payment"). In this case, DHS's approach could effectuate an unconstitutional taking, especially given that the perfected security interests in this case predate the 2013 enactment of Iowa Code section 249A.44(3), the source of DHS's authority for appointment of the receiver. *See* 2013 Iowa Acts ch. 24, § 8(3). "The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of 'constitutional shoals' when possible." *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014); *see also* Iowa Code § 4.4(1) ("In enacting a

statute, it is presumed that: (1) Compliance with the Constitutions of the state and of the United States is intended.").

DHS counters with a policy argument that it will be difficult to hire receivers for financially leveraged health care providers if secured assets cannot be used to compensate the receivers. *See* Iowa Code § 4.4(3) (noting the further presumption that with respect to statutory enactments, "[a] just and reasonable result is intended"); *In re Det. of Stenzel*, 827 N.W.2d 690, 698–99 (Iowa 2013) (applying this principle). There are several answers to this argument. For one thing, many government objectives could be achieved more easily if the government were not required to honor private property rights. Also, we do not foreclose the possibility that DHS could demonstrate a superior right to a health care provider's assets, such as through an equitable lien, to the extent those assets are traceable to a DHS overpayment. Finally, as we now discuss, the law generally allows receiver expenses to be charged against a secured creditor's collateral to the extent it can be demonstrated that the creditor benefited from or consented to the receiver's appointment.

Around the country, the general rule is that receivership expenses may be paid out of encumbered property only to the extent the lien creditor benefits from or consents to the receivership. *See, e.g., SEC v. Elliott*, 953 F.2d 1560, 1576, 1578 (11th Cir. 1992) (stating that "[s]ecured creditors should only be charged for the benefit they actually receive" and remanding for "a fuller and more accurate inquiry into the services the Receiver provided to these secured creditors"); *Gasser v. Infanti Int'l, Inc.*, 358 F. Supp. 2d 176, 182 (E.D.N.Y. 2005) ("[W]hen there is a specific lien on the [receivership] property at the time it comes into the receiver's hands, that lien has priority over the receiver's fees and

expenses . . . ." (Second alteration in original.) (Internal quotation marks omitted.)); *Dir. of Transp. v. Eastlake Land Dev. Co.*, 894 N.E.2d 1255, 1262 (Ohio Ct. App. 2008) ("It is well-settled law that neither the mortgagee nor the mortgaged property is liable for a receiver's fees and expenses unless the mortgagee has acquiesced in the receivership proceedings."); *S. Cnty. Sand & Gravel Co. v. Bituminous Pavers Co.*, 274 A.2d 427, 430 (R.I. 1971) ("[A] judicial rule has evolved which permits receivership expenses to be taxed against encumbered property when the secured creditor or his property has been benefited or otherwise advantaged by the receivership proceedings and then only in proportion to the extent of the benefit or advantage conferred.  In addition, and in appropriate circumstances, the encumbered property may similarly be entrenched upon if the secured creditor has expressly or impliedly either acquiesced in or consented to the receivership proceedings . . . ."); *Chase Manhattan Bank v. Bowles*, 52 S.W.3d 871, 880 (Tex. Ct. App. 2001) (stating that "a lienholder's interest in property held in a receivership has priority over costs and expenses incurred in the administration and operation of the receivership" unless the receivership is "formed at the instigation of the lienholder, or the lienholder acquiesces to the receivership and seeks its benefits," or the lienholder "knows of and consents to the receivership, and fees, expenses, and debts are incurred from a receiver's operation of a business important to the public" (internal quotation marks omitted)); 65 Am. Jur. 2d Receivers § 246, at 797–98 (2011) ("It is indispensable to the preference over existing liens of any claim based on operating expenses of a receivership . . . that it be founded upon property furnished or services rendered to the business, which either preserved or enhanced the value of the security of the mortgage or secured debt, and thereby inured to the benefit of the

mortgagee or other lienee . . . .");[6] 75 C.J.S. Receivers § 361, at 597 (2013) ("Mortgaged or encumbered property or the proceeds thereof are not chargeable with receivership expenses where the receiver was not appointed at the instance or in the interest of the mortgagee or encumbrancer and where no service was rendered to such property."); Annotation, *Liability of Mortgagee or Mortgaged Property for Expenses of Receivership Not Sought by Him, or for Expenditures by Receiver in Connection with the Property*, 104 A.L.R. 990, 991 (1936) ("Without attempting at this point to distinguish between different types of expenses involved, it may be stated as a general rule that neither a mortgagee nor the mortgaged premises are liable for receivership expenses not sought or acquiesced in by him; at least where he receives no benefit therefrom."). DHS cites no recent authority to the contrary.[7]

The leading treatise on receivers, although by now somewhat long in the tooth, is to the same effect:

> When a court appoints a general receiver of the property of an individual or a corporation, . . . part or all of this property may be covered by liens or mortgages. The general purpose of a general receivership is to preserve and realize the property for the benefit of creditors in general. No receivership may be necessary to protect or realize the interests of lienholders. In such cases the mortgagees and

---

[6]A different section of this treatise states, with respect to counsel for the receiver, "Such counsel fees are classed as receiver's expenses and, like other expenses of administration, take precedence over preexisting liens on the funds or property in receivership." 65 Am. Jur. 2d Receivers § 225, at 780. We quoted this sentence in dictum in *Foxley Cattle Co. v. Midwest Soya International, Inc.*, 585 N.W.2d 231, 233 (Iowa 1998). Regardless, we do not believe this passing statement in section 225 vitiates the treatise's more detailed treatment of the subject of receiver expenses in section 246.

[7]Generally speaking, the Federal Bankruptcy Code follows the same equitable approach found in the common law. Thus, it provides that the bankruptcy trustee, who is analogous to the receiver, "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c).

lienholders cannot be deprived of their property nor of their property rights and the receivership property cannot as a rule be used nor the business carried on and operated by the receiver in such a way as to subject the mortgagees and lienholders to the charges and expenses of the receivership. A court under such circumstances has no power to authorize expenses for improving or making additions to the property or carrying on the business of the defendant at the expense of prior mortgagees or lienholders without the sanction of such mortgagees or lienholders.

. . . .

If a lienor avails himself of the receivership, or if the activities of the receiver have been of benefit and advantage to the lienor, it is but right and fair that he should be required to pay his just burden of the costs, including allowances to the receiver.

A lienor consenting to appointment of receiver and, therefore, to a liquidation of the insolvent's affairs through the receivership instrumentality, is an exception to rule that receiver's allowances are not entitled to outreach the priority of existing liens.

2 Ralph E. Clark, *A Treatise on the Law and Practice of Receivers* § 638, at 1070–72 (3d ed. 1959) (footnotes omitted).[8]

DHS responds that this general rule, if it is a general rule, has not been adopted in Iowa. It cites an 1898 case where we held the district court could order the expenses of a receiver to be paid out of assets that were subject to prior liens, after noting that "[n]o question was made as to the legality and propriety of the appointment of this receiver." *Gallagher v. Gingrich*, 105 Iowa 237, 239, 74 N.W. 763, 763 (1898). We

---

[8]DHS directs us to some old authority to the effect that funds advanced for the operational costs of a railway, as a quasi-public entity, can take priority over prior liens. *See, e.g., Union Trust Co. of N.Y. v. Ill. Midland Ry. Co.*, 117 U.S. 434, 455–56, 6 S. Ct. 809, 820–21, 29 L. Ed. 963, 970 (1886). DHS asserts that Medicaid providers are quasi-public entities. This principle appears to be limited to railroads by the weight of authority. *See Lewis & Dalin, Inc. v. E.H. Clarke Lumber Co.*, 204 P.2d 130, 133 (Or. 1949) (noting this principle "evolved in railway receiverships" and declining to apply it to "a purely private corporation"). We are not aware of it having been applied to other types of entities (or even to railroads in the recent past).

went on to say, "The contention is that [payment of the receiver's expenses] must be deferred to the payment of existing liens, but such is not the law." *Id.*

Standing on its own, our decision in *Gallagher* might have considerable persuasive force; however, we believe much of that force has been drained by the following year's decision in *Smith*, 109 Iowa at 55, 79 N.W. at 458, and by another decision we rendered just six years later, *Frick v. Fritz*, 124 Iowa 529, 536–37, 100 N.W. 513, 515–16 (Iowa 1904). In *Frick*, we held that chattel mortgage holders could not be required to pay out of their secured property for the expenses of a receiver of cattle, noting, "We find no merit in the contention for plaintiff that interveners have been benefited by the receivership, and should bear the expense thereof." *Id.* at 536, 100 N.W. at 515. We added,

> Had it been made to appear that in making claim to the proceeds of the property realized by means of the receivership they had availed themselves of any benefits resulting from such receivership, they might, no doubt, have been properly required to submit to an equitable apportionment of the costs in accordance with the benefits received. But no showing for an equitable apportionment of costs is made, and under the record we think that no such showing could be made.

*Id.* (citations omitted).

Based on the foregoing, we hold that neither Iowa Code section 249A.44(3) nor Iowa Code section 680.7 authorizes the expenses of a receiver appointed under section 249A.44(3) to be charged against a secured creditor's collateral. Instead, our state follows the general equitable rule on receiverships, under which the costs of a receiver may be charged against a third party's security interest only to the extent the

secured party has been shown to benefit from the receiver's services or in the event the secured party has consented to the receiver.[9]

As an alternative ground for affirmance, DHS argues that the Bank consented to the receivership. The record shows otherwise: The Bank took action as soon as it became aware that its security interests were threatened. The Bank has consistently objected to the payment terms for the receiver. However, on remand we leave open the question of whether the Bank has received a benefit from the receiver's work and if so, how much.

**IV. Conclusion.**

We reverse and remand for further proceedings consistent with this opinion. Costs on appeal are taxed against DHS.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All justices concur except Waterman, J., who takes no part.

---

[9]We do not think Medicaid's principle of "broad recovery so as to promote the future provision of services," *see Estate of Melby*, 841 N.W.2d at 880, overrides the considerations we have noted here. This priority contest is between a court-appointed receiver for a Medicaid provider and a prior secured lender to the same provider. It is not clear that favoring the former over the latter will lead to greater availability of Medicaid services. If DHS's position were to prevail, lenders might be reluctant to make credit available in the future to entities that provide Medicaid services, since they could not be assured of the priority of their liens. This could potentially limit the availability of Medicaid services.

Regardless, DHS is not without potential options. As noted here, DHS can charge receivership expenses against assets covered by a third-party security interest to the extent the secured creditor is benefiting from the receivership. Also, nothing we have said herein forecloses the possibility that DHS could assert an equitable lien on former Medicaid funds traceable to the hands of a health care provider or "other person" or could enter into an arrangement under which it receives some lien protection for future Medicaid payments. Those issues are not before us. What DHS cannot do is simply charge the costs of a receivership to assets covered by a preexisting security interest.